665 So.2d 589 (1995)
Curtis ALFONSO and Christine Alfonso, wife of Curtis Alfonso,
v.
PICCADILLY CAFETERIA, INC., Don Monsorial and Crawford and Company.
No. 95-CA-279.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
Writ Denied February 16, 1996.
*592 Law Offices of Tonry & Ginart, Richard A. Tonry, Michael C. Ginart, Jr., Chalmatte, for Plaintiffs-Appellants Curtis Alfonso and Christine Alfonso.
McQuaig & Solomon, APLC, Scott W. McQuaig, W. Chad Stelly, Metairie, for Defendant-Appellee Piccadilly Cafeterias, Inc.
Philip Borne, New Orleans, for Defendant-Appellee-2nd Appellant Highlands Insurance Company.
Before GOTHARD, CANNELLA and KLIEBERT, JJ.
KLIEBERT, Judge.
Plaintiffs, Curtis Alfonso and his wife, Christine, sued Piccadilly Cafeteria, Inc., and one of its site managers, Don Manseur[1], after Curtis slipped and fell in the Piccadilly located at 2609 Jefferson Highway. At the time of the incident, Alfonso was in the course and scope of his employment with In-House Vaults, Inc., an armored car company that delivered change (coin and currency) to businesses in the area. Highlands Insurance Co., In-House's worker's compensation carrier, intervened in the suit to recover benefits it paid to or on behalf of plaintiff.
After a three day trial, a twelve-person jury returned a verdict, finding that a premises hazard existed, but casting plaintiff with 83% contributory fault. The jury awarded Alfonso $11,000.00 in general damages, $1,100.00 in past lost wages, $1,000.00 in future lost wages, and awarded $0 for past medical expenses and future medical expenses. The jury also dismissed Christine Alfonso's loss of consortium claim.
Following trial, the plaintiffs filed a Motion for Judgment Notwithstanding the Verdict and Alternatively a Motion for New Trial. After a hearing on these motions, the trial judge granted the Motion for JNOV in part, awarding plaintiffs $7,500.00 in past medical expenses, but denying all other motions. Thereafter, plaintiffs appealed.
On appeal, plaintiffs assign numerous errors of the trial court. First, plaintiffs argue that the trial court erred in not ordering defense counsel to produce the police report of an automobile accident that occurred after plaintiff's fall in the Piccadilly but before his fusion surgery. Second, the trial court erred when it permitted a bag of coins and currency which had not been admitted into evidence to be published to the jury as demonstrative evidence. Third, the trial court erred in not granting a mistrial after the bailiff commented on the weight of the bag of coins in the hearing of the jury. Fourth and fifth, plaintiffs argue the jury committed manifest error in finding the plaintiff 83% at fault and awarding him only $11,000.00 in general damages. Sixth, the jury erred when it awarded plaintiff only $1,100.00 in past lost wages. Seventh, the jury erred when it awarded plaintiff only $1,000.00 in future lost wages. Eighth, the jury erred when it awarded nothing for future medical expenses. Ninth, the trial court erred when it granted in part plaintiffs' Motion for JNOV in that it awarded only $7,500.00 in past medical expenses, in light of the stipulation that past medical expenses totaled $103,166.57. Last, the jury committed manifest error when it denied plaintiff Christine Alfonso's loss of consortium claim.
After thorough review of the record and jurisprudence, we amend the judgment in part, reallocating fault between the parties to 50/50, raising the general damages to $25,000.00, and awarding Mrs. Alfonso $1,000.00 for loss of consortium. All other aspects of the trial court's judgment are affirmed.
Plaintiff's first assignment of error concerns the trial court's failure to order defense counsel to produce a police automobile accident report that was mentioned in defense's cross-examination of Dr. Gessner, plaintiff's treating orthopedist. We see no error for the following reasons. First, the *593 report was never introduced into evidence, nor did the witness look at the report. Second, plaintiff Christine Alfonso filed a lawsuit as a result of this accident, using the same counsel as in the instant lawsuit. Thus, the accident report was available equally to both sides' counsel. Since plaintiffs' counsel could have procured the report on its own, we see no error in the trial court's ruling.
Plaintiffs' second assignment of error concerns the publishing to the jury of a bag, representing the weight of the coins, that was not entered into evidence as the actual bag plaintiff carried. Additionally, plaintiffs argue that the judge should have granted their Motion for Mistrial after the bailiff commented on the weight of the bag within earshot of the jury.
The court ruled that the bag could be used as a demonstrative exhibit for purposes of its weight only. The bag was not offered into evidence as the actual bag carried by plaintiff, but was shown to be the same size and type as the bag Mr. Alfonso carried the morning of the incident. We see no error in its publication to the jury as a demonstrative aid. The evidence was relevant, probative, and a proper foundation was laid for its introduction; the plaintiffs have not shown the bag's introduction to have been prejudicial to their case. See Dawson v. Mazda Motors of America, Inc., 517 So.2d 283 (La. App. 1 Cir.1987) and Pullen v. Ziegler, 562 So.2d 1093 (La.App. 4 Cir.1990).
Regarding the denial of plaintiffs' Motion for Mistrial, in Searle v. Travelers Insurance Company, 557 So.2d 321, 323 (La. App. 4 Cir.1990), the Fourth Circuit said:
The Louisiana Code of Civil Procedure does not expressly provide for mistrials, and the jurisprudence concerning motions for mistrial is limited. Generally, mistrials are properly granted because of some fundamental failure in the proceeding. 76 Am.Jur.2d, Trial Sec. 1073. It is well settled in Louisiana law that a motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity and (2) where no other remedy would provide relief to the moving party. Spencer v. Children's Hospital, 432 So.2d 823, 826 (La.1983); Streeter v. Sears, Roebuck & Co., 533 So.2d 54, 62 (La.App. 3d Cir.1988), writ denied 536 So.2d 1255 (La. 1989). Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instructions. 76 Am.Jur.2d, Trial Sec. 1072.
There is no evidence that the jury heard the bailiff's comments. Plaintiffs' counsel requested that the trial court give the jury a general curative instruction, which the court did. The court also offered to question the jury as to whether the comment was heard. Counsel for plaintiffs declined this offer. In light of the whole scenario, we see no error in the trial court's denial of the motion for mistrial.
The next items for review pertain to the jury's apportionment of fault and awards for damages. A Court of Appeal may not set aside a trial court's or a jury's findings of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the Appellate Court may feel that its own evaluations and inferences are as reasonable. Id. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id. Allocation of fault by the trial court is factual and will be reviewed under the "clearly wrong" standard. Lee v. Missouri Pacific Railroad Co., 540 So.2d 287 (La.1989).
The discretion vesting in the trier of fact is "great" and even vast, so that an appellate court should rarely disturb an award for general damages. Reasonable persons frequently disagree with the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff on the *594 particular circumstances, that the Appellate Court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
Plaintiff was in the course and scope of his employment when the incident occurred. Plaintiff had originally been hired as a driver of the armored car but had recently been promoted to "jumper," the person who physically carried the money from the armored car into the business. The change orders were described as being packaged in canvas "ice bags" that had handles. One bag weighed approximately thirty-three pounds. On the day in question, Piccadilly's change order comprised three bags, because of the heavier volume of business on the weekends.
Mr. Alfonso testified that he had been to this Piccadilly on at least one prior occasion. He delivered the change that Saturday morning at approximately 10:00 a.m., before the store opened for business at 11:00 a.m. He was let in by employee Mr. Randal Tomeny, who locked the door after plaintiff entered. Alfonso entered the store through the exit door and proceeded up the exit aisle, because it was the shortest route, as he had been instructed during his training. Testimony from Piccadilly employees established that company policy dictates that the entire store is freshly mopped each morning prior to opening. The exit aisle is always mopped last, presumably because customers will not travel down that aisle until after they have entered and eaten. Mr. Alfonso testified that he did not observe any "wet floor" signs, but he was also actively scanning the inside of the store for suspicious characters (also a part of company training). Testimony from Piccadilly assistant manager Breaux and manager Manseur stated that "wet floor" signs were posted, but Tomeny later testified at trial that this was not so, contrary to an earlier statement by him. The testimony also conflicted on the issue of whether Piccadilly employees gave Alfonso a verbal warning about the wet floor. Alfonso and Tomeny stated that no warnings were given, but several other Piccadilly employees said warnings might have been given. Testimony disagreed as to how plaintiff carried the bags of change. The driver and plaintiff testified that he was carrying the 90+ pound change order in a canvas bag with handles, but at least two Piccadilly employees testified that he carried the change bags cradled in his arms. Plaintiff denied this, stating that he could not have reached his gun if he were carrying change this way. Plaintiff denied that company policy required him to use a dolly to carry this amount of change; he stated that dollies were only used on bank runs and that his truck was not equipped with one.
Alfonso testified that he slipped and fell on his backside, but immediately got up and completed his delivery to the office. He testified that he was upset because someone laughed at him when he fell. His driver testified that he was visibly upset when he went back to the vehicle. Alfonso did not fill out an accident form at the time. He and the driver had left the area when she convinced plaintiff to return to the Piccadilly to fill one out. Plaintiff was given a copy of the accident report, which stated that he had been warned by Piccadilly's staff of the wet floor. Because he disputed that he had been warned, he returned to the Piccadilly and asked that this entry in the report be changed.
Causation is a fact specific inquiry. Great deference is accorded to the trier of fact on the question of causation. When multiple causes are present, the defendant's conduct is a cause in fact when it is a factor generating plaintiff's harm. Rick v. State, DOTD, 630 So.2d 1271 (La.1994). The jury was instructed that the plaintiffs had to prove by a preponderance of the evidence that Piccadilly was negligent and that plaintiffs' damages were caused by such negligence. The jury was also instructed that a claim for damages may have more than one cause.
Plaintiffs contend that the trial court erred in finding Curtis 83% at fault in the incident. Mindful of the great discretion given the fact finder, we agree, and believe that the evidence shows that the proper allocation of fault should be 50% to plaintiff and 50% to Piccadilly. The testimony showed that plaintiff carried out his duties according to company policy, which perhaps caused him to be *595 inattentive to his surroundings. Likewise, Piccadilly let Alfonso into the store through the exit door and allowed him to proceed up the freshly mopped exit aisle.
Next, plaintiffs argue that the jury erred in awarding him only $11,000.00 in general damages. They contend that this assessment is error in light of the evidence regarding plaintiff's back injury and subsequent fusion surgery, and his continued need for the care of a psychiatrist. Several medical doctors testified about plaintiff's medical condition. They all agreed that plaintiff suffered from a preexisting congenital condition, spondylolisthesis, which is an incompletely formed vertebrae. This condition can be asymptomatic, but is the kind of condition that will become symptomatic upon a trauma or normal wear and tear caused by daily activities. The evidence established that the plaintiff's previous work experience had been manual labor. The job with In-House Vaults involved stooping and lifting heavy loads, also determined to be an activity which could hasten symptoms of spondylolisthesis. At the time of the accident, plaintiff was very obese (he was 5'8" and weighed 280 lbs.) which was also an aggravating factor. The jury heard further evidence that the plaintiff had been in two car accidents: the first one about two weeks before the incident at Piccadilly, and the second several weeks before his fusion surgery in November 1992.
Dr. Gessner, plaintiff's treating orthopedist, testified plaintiff's condition was asymptomatic prior to the slip and fall, and that spondylolisthesis did not usually become symptomatic until the fifth or sixth decade of life. He said that CT scans and myelograms showed no bulging discs or herniated discs. He did not relate plaintiff's back pain primarily to the slip and fall, but related it to the spondylolisthesis aggravated by the incident. On cross examination, Dr. Gessner testified that the workers' compensation carrier had paid all his bills. This information was received by the jury without objection by plaintiff's counsel or a request for a curative instruction. He also testified that the plaintiff had not informed him of the auto accident in November 1992, wherein plaintiff Christine Alfonso sued Domino's Pizza.
Plaintiff's treatment history reveals that he suffered unrelieved back pain from the incident until the fusion surgery in November 1992. Plaintiff was hospitalized several times for pain treatments, consisting of epidural blocks and other devices. Additionally, plaintiff developed psychological symptoms as a result of the pain and inability to work. He became severely depressed, and was once hospitalized after threatening suicide. Alfonso began seeing Dr. Mangat, a psychiatrist, for treatment of his chronic depression, which has improved with therapy and since the fusion surgery. Because plaintiff's physical symptoms did not improve, Dr. Gessner performed spinal fusion surgery, the results of which he termed "fair."
Considering all of the testimony, and also bearing in mind the standard of review, we believe that the general damage award should be increased to $25,000.00.
Next, the plaintiffs appeal the awards for past lost wages ($1,100.00) and future lost wages ($1,000.00). The plaintiffs also appeal the trial court's failure to increase these awards on their Motion for JNOV. The evidence showed that Mr. Alfonso did not have an extensive earning history prior to the accident. For the two preceding years (1987 and 1988), his earnings were $5,400.00 and $2,200.00. Plaintiff's counsel argued that these low figures represented significant time out of work because of a previous work related accident (plaintiff lost part of his finger), and that more weight should have been given to plaintiff's income with In-House Vaults for the year 1989. The jury was presented with the testimony and calculations of two expert economists. When the jury gives credence to the testimony of one rather than the other, such a determination is not manifest error.
Regarding the award for future economic loss, the jury heard the testimony of two vocational rehabilitation counselors. The plaintiff's expert, Dr. Gorman, testified that plaintiff should be enrolled in a two year extensive job retraining program, given his medical history and his educational background. However, on cross examination, both plaintiff and Dr. Gorman testified that *596 the plaintiff had not applied for any jobs since the slip and fall, and thus had not been turned down for any position, thus calling into question the need for the two year retraining program. The jury had adequate evidence to conclude that plaintiff did not bear his burden of proof regarding these two items of damage.
Next, the plaintiffs contend that the trial court erred in granting a JNOV for past medical expenses for $7,500.00, when the parties stipulated that the plaintiff had incurred medical expenses up to the trial of $103,166.57. First, it is important to note that the parties' stipulation was to the amount only, and was not to any causal connection between the slip and fall and the medical treatment. Second, the jury heard without objection from counsel that all the medical bills had been paid by the workers' compensation carrier. Third, this award is consistent with the other awards that reflect that the jury felt that Piccadilly's actions were only a small part of the cause of plaintiff's damages.
Plaintiffs next argue that the jury erred in dismissing plaintiff Christine Alfonso's claim for loss of consortium. In this regard, we agree that the plaintiff proved by preponderance of the evidence to entitlement to this award. The evidence showed that Mr. Alfonso became very angry after the slip and fall. He took out his frustration on his wife, hollering at her and throwing things. On one occasion, he shook her roughly. Additionally, the medication taken by Mr. Alfonso affected his ability to perform marital relations. In light of this uncontroverted testimony, we believe that Christine Alfonso should be awarded $1,000.00 for loss of consortium.
Accordingly, for the reasons above, we amend the trial court's judgment to reallocate fault 50% to the plaintiff and 50% to Piccadilly, increase the general damage award to $25,000.00, thus entitling the plaintiff to collect half of this or $12,500.00, and award damages to Mrs. Alfonso for loss of consortium. All other awards of the trial court are affirmed. Costs are to be borne equally by the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Defendant Manseur was incorrectly identified as Don Mansorial. Defendant Crawford & Company was voluntarily dismissed from the proceedings.