JDUFRESNE, Judge.
This is an appeal by plaintiff/appellant, Dennis Vinson, from a judgment of the trial court denying his post-trial motions for judgment notwithstanding the verdict and for new trial or additur as to damages only. For the reasons set forth herein, we affirm the jury’s award of damages to the plaintiff.
On December 16, 1992, as Mr. Vinson was attempting to merge at Interstate 10 and Causeway Boulevard, his vehicle was rear ended by a vehicle being driven by Larry Lampkin. As a result of this accident, Mr. Vinson sustained injury to his back as well as property damage to his vehicle. He subsequently filed suit against Larry Lampkin, the driver of the vehicle, and State Farm Mutual Automobile Insurance Company, the ^automobile liability insurer. Mr. Vinson also filed suit against his own uninsured/un-derinsured motorist carrier, Allstate Insurance Company. Prior to trial, Mr. Vinson reached a settlement with Larry Lampkin and State Farm Insurance Company, and they were dismissed from the lawsuit. In addition, Allstate Insurance Company tendered to plaintiff $20,000.00 of his $100,000.00 policy and also paid $2,000.00 under the medical payment provisions of the Allstate policy. On August 25,1997, with Mr. Vinson seeking to collect the balance of his Allstate policy limits, the matter proceeded to a jury trial on the issue of damages only.[1]
After considering the evidence presented, the jury returned a verdict in favor of plaintiff finding that he did suffer damages as a result of the December 16, 1992 accident. The jury awarded Mr. Vinson $20,000.00 for pain and suffering and $10,000.00 for past medical expenses. A written judgment in accordance with the jury verdict was signed on October 1, 1997.[2] Plaintiff subsequently filed a motion for judgment notwithstanding the verdict on the issue of damages and in the alternative, plaintiff requested that the court grant a new trial or additur. After a hearing, the trial judge denied the plaintiffs motions. A written judgment in accordance therewith was signed on November 12, 1997. From the judgments of October 1, 1997, and November 12,1997, the plaintiff now appeals.
On appeal, plaintiff contends that the trial court erred in failing to grant a judgment notwithstanding the verdict on the issue of quantum or in [¡the alternative a new trial or additur. Although couched in terms of the denial of these motions,[3] the plaintiff is ultimately challenging the jury’s award of damages, - arguing that the evidence elicited at trial did not support such a low award. Specifically, Mr. Vinson claims that the award of $20,000.00 for pain and suffering is unreasonably low in light of the serious nature of his *1149 injuries. He further asserts that the award of $10,000.00 for past medical expenses was unreasonably low in light of the fact that the stipulated medical bills totaled $21,910.90. These issues are best resolved by a review of the record in its entirety, focusing particularly on the evidence adduced at trial.
The automobile accident which forms the basis of this litigation occurred on December 16, 1992, when plaintiffs vehicle was rear ended by a vehicle being driven by Larry Lampkin. Mr. Vinson testified that on the day of the accident, he was stunned, but did not think he was hurt and did not feel any pain at that time. However, the following day, he felt severe pain in his back and neck areas.
At trial, the extent of plaintiffs injuries as well as his course of treatment was revealed through his own testimony as well as the testimony of Dr. Edmund Landry, an orthopedic surgeon. According to plaintiffs testimony, he did not seek treatment for his injuries until the first week of January 1993, when he went to see Dr. Stephanie Hardy at the Kenner Chiropractic Clinic, with complaints of pain in his neck, shoulders, and lower back. He underwent treatment with Dr. Hardy from the beginning of ^January until late April of 1993, at which time she discharged him from her care, telling him there was nothing more that she could do for him. Although this treatment provided him immediate relief for his neck and shoulder pain, Mr. Vinson’s back pain persisted.
Subsequently, in June of 1993, Mr. Vinson went to see Dr. Edmund Landry, an orthopedic surgeon, complaining of lower back pain with radiation of the pain into the thigh. The physical examination performed on Mr. Vinson did not reveal any objective signs that he sustained an injury to his back. In addition, the x-rays taken of Mr. Vinson’s lower back were normal. However, based on the information given by Mr. Vinson, the doctor felt that he had sustained a lumbar strain and thereafter recommended that he undergo physical therapy to rehabilitate his lower back. Mr. Vinson underwent physical therapy for about four weeks and then returned to see Dr. Landry, feeling that his condition was unimproved. At that time, Dr. Landry recommended that plaintiff undergo diagnostic testing consisting of an MRI. The results revealed that Mr. Vinson had a herniated disc in the lower part of his back at L-5, S-l, with nerve root compression. In the latter part of July, pursuant to Dr. Landry’s recommendations, Mr. Vinson underwent a fora-men injection to reduce the inflammation of the nerve. This nerve block together with anti-inflammatory medication helped to alleviate some of Mr. Vinson’s pain. Mr. Vinson again visited Dr. Landry in August, September and December- of 1993, and was basically advised to take his anti-inflammatory medication, to continue with the prescribed exercise program and to be cautious about his activities. After this December visit, Mr. Vinson did not return to see Dr. Landry until approximately fifteen months later in March of 1995 when he experienced a ^significant increase in pain. Apparently Mr. Vinson was performing some household chores and when he dragged out a garbage can, his back twisted, initiating the severe pain that he experienced before the nerve block. At a subsequent April visit, Mr. Vinson informed Dr. Landry that he felt somewhat better. During the next six month interval, Mr. Vinson’s pain had apparently been well controlled by the anti-inflammatory medication. However, in October of 1995, Mr. Vinson returned to see Dr. Landry because he had a flare up of the back and leg pain. At this visit, the doctor recommended that he undergo another nerve block. According to Mr. Vinson, this second nerve block did not provide him with any relief.
Mr. Vinson again saw Dr. Landry in early November 1995, and informed him that he had been involved in a second rear end collision in late October, that he tensed up when he saw the car coming, and that he had immediate problems with lower back discomfort and spasms. Mr. Vinson reported that prior to this October 30 accident, he experienced constant burning in the left gluteal area and that since that time, he has experienced the same constant burning of the left gluteal area, plus tenseness, tightness, soreness and spasms of the lower back and glu-teal muscles on both right and left sides. Dr. Landry referred Mr. Vinson to physical *1150 therapy and advised him to continue taking the anti-inflammatory medication as well as Tylenol for the pain. Mr. Vinson saw Dr. Landry again in mid-November and then in December of 1995. On these visits, although Mr. Vinson still complained of pain, he was making some improvement and advised the doctor that the pain was better with the therapy and the medication.
When Mr. Vinson returned to see Dr. Landry in January of 1996 with ^continued complaints of back pain radiating down his left leg, the doctor suggested that he undergo another MRI. The results of this MRI were consistent with the first one which indicated a disc herniation at L-5, S-l. Although the testing still showed a disc herniation, the doctor testified at trial that this second scan looked somewhat better than the initial one insofar as the disc was no longer pressing against the nerve. Although the disc was still bulging out to the middle, the nerve appeared clear. After going over the results of the MRI with Mr. Vinson at his February visit, Dr. Landry referred him to Dr. Mitchell Harris at LSU Medical Center to consider the possibility of undergoing a percutaneous discectomy. Mr. Vinson did in fact visit Dr. Harris in March of 1996. Dr. Landry testified that Dr. Harris was of the opinion that Mr. Vinson did not have a true herniated disc and therefore was not a candidate for the procedure. Although Dr. Harris was not called as a witness at trial, his report to Dr. Landry was admitted into evidence by the defense.
Mr. Vinson next saw Dr. Landry in October of 1996 with continued complaints of back pain and increasing left leg pain. He again visited Dr. Landry in November of 1996 complaining of right knee pain, a problem not previously experienced by Mr. Vinson. Apparently, as Mr. Vinson was getting up from a chair, his left leg gave a little and his weight shifted to his right leg, causing his knee to buckle. Dr. Landry gave Mr. Vinson a cortisone injection into the knee which provided some temporary relief and recommended that he undergo an MRI of the knee if his pain persisted. The results of the MRI showed that Mr. Vinson had a torn medial meniscus which required surgery. After the January 16, 1997 surgery, Mr. Vinson had rapid resolution of the knee problem, was able to return to work ^promptly, and basically had an uneventful recovery from knee surgery. Mr. Vinson acknowledged that his knee pain did not occur until approximately one year after the second accident.
Dr. Landry subsequently referred Mr. Vinson to Dr. Charles Aprill, a radiologist specializing in hard to diagnose back problems. Mr. Vinson visited Dr. Aprill on two occasions in February of 1997. After a physical examination as well as additional testing, Dr. Aprill felt that Mr. Vinson had a sprain of the sacroiliac joint on the left side. Dr. Aprill was of the opinion that the pain Mr. Vinson was experiencing was not coming from any type of herniated disc but rather was related to the left sacroiliac joint. Dr. Aprill was not called as a witness at trial; however, his report to Dr. Landry was introduced into evidence by the defense. At trial, Mr. Vinson testified that the last time he saw Dr. Landry was in July of 1997, but that he is still under the doctor’s care and is taking medication for his problems.
During the course of his trial testimony, Dr. Landry offered his expert opinion that Mr. Vinson’s low back and leg pain is caused by a herniated disc, and that the herniated disc resulted from a trauma, specifically the December 16, 1992 automobile accident. He also gave his opinion that the right knee injury was causally related to the herniated disc suffered as a result of the December accident. Dr. Landry acknowledged that there was some evidence of degenerative change in the disc, but felt that the herniated disc was the result of a trauma as opposed to degenerative change. The doctor, however, during cross-examination, admitted that a review of the MRI could not actually reveal when the protrusion or herniation occurred and thus, he was unable to testify that any abnormalities on the MRI were directly related to the December 1992 ^accident. When asked about future medical treatment, Dr. Landry testified that surgery to remove the disc might be an option and that this surgery would cost approximately $15,000.00. However, at the time of trial, the doctor had not actually recommended that plaintiff undergo *1151 surgery. When asked about future medical bills, the doctor stated that about $1,000.00 a year would be a reasonable estimate in light of the fact that Mr. Vinson will need medication on a regular basis and will also have to be seen for periodic check-ups.
There was also testimony at trial to show the effect Mr. Vinson’s injuries have had on his everyday life, including his employment as a train engineer. Mr. Vinson testified that as a result of the injuries he suffered in the 1992 accident, he lost about 28 days of work, resulting in lost wages of approximately $5,000.00[4]. He further testified that since the accident, he has to occasionally ask for assistance in performing job related duties requiring physical activity, although admittedly most of his duties involve sitting. According to Mr. Vinson, his back injury has totally changed his life and he can no longer engage in the physical activities that he used to enjoy, such as jogging and dancing. He claims that since the accident, he has gained weight, is no longer physically fit, is unable to help around the house, and is depressed about his condition. However, during his testimony, Mr. Vinson did admit that after both the first and second accidents, he was able to return to work and could fully perform his job duties. Since the accident, he has not failed any of his job related testing and has in fact been able to fully pass all the job skills tests as well as a ^company physical that was performed in July of 1995.
Anthony Mills, a co-worker of plaintiff for over twenty-five years, testified that after the December 1992 accident, Mr. Vinson had complained to him about physical problems including back problems, whereas prior to this accident, Mr. Vinson never complained of such problems. He also testified- that before the accident, Mr. Vinson was able to perform all his job related duties whereas after the accident, he needed assistance in performing some of the physical duties. Since the accident, Mr. Mills noted that Mr. Vinson has gained a lot of weight, and has been depressed and irritable. Jerry En-tringer, a neighbor of Mr. Vinson for about sixteen years, testified that they jogged together from April of 1988 through December of 1992, running four to five times a week and participating in races. However, after the December 1992 accident, Mr. Vinson was no longer able to run because of his back pain. Mr. Entringer also noted a change in Mr. Vinson’s personality after the accident insofar as he was depressed and upset.
Having been presented with this evidence, the jury found that plaintiff suffered damages as a result of the December 1992 accident and thereafter awarded him $20,-000.00 for pain and suffering and $10,000.00 for past medical expenses. The discretion vesting in the trier of fact is great and even vast, so that an appellate court should rarely disturb an award for general damages. Reasonable persons frequently disagree with the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a plaintiff on the particular circumstances, that the appellate court should increase or reduce lipthe award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Alfonso v. Piccadilly Cafeteria, Inc., 95-279 (La.App. 5 Cir. 11/28/95), 665 So.2d 589. We have reviewed the record in its entirety and find that the award of $20,-000.00 for pain and suffering, while arguably on the lower end of possible damages, is supported by the record. We cannot say that the award of $20,000.00 is, in either direction, beyond that which a reasonable trier of fact could assess under the circumstances presented herein.
We likewise find that the jury’s award of $10,000.00 for past medical expenses is supported by the record, despite the fact that the medical bills introduced at trial totaled over $21,000.00. While the parties stipulated to the accuracy of the medical bills, they did not concede that those bills were incurred as a result of any injuries sustained in the December 1992 accident. The evidence, as previously set forth, would clearly support the jury determination that not all of the bills introduced were incurred as a result of the December accident, especially in light of the fact that plaintiff was involved in a subse *1152 quent accident and that his knee problem did not surface until approximately one year after the second accident.
For the reasons set forth herein, the jury’s award of damages to Mr. Vinson is hereby affirmed.

AFFIRMED.

. Prior to trial, Allstate agreed to stipulate to the liability of Larry Lampkin.

. It was apparently agreed by all parties that the jury would not be advised that plaintiff had received a total of $47,000.00 prior to trial and further that Allstate Insurance Company would receive a credit of $47,000.00 to offset any award of the jury. The written judgment reflected this agreement, specifically providing that "Allstate Insurance Company shall receive a credit of $47,000.00 to offset the jury’s award and the legal interest on the award."

.It has been held that a trial court’s denial of a motion for judgment notwithstanding the verdict and for new trial are interlocutory, non-appeal-able judgments. Suarez v. Modica, 609 So.2d 1013 (La.App. 5 Cir.1992); Regan v. Bandeaux, 532 So.2d 418 (La.App. 3 Cir.1988); Granger v. State Farm Mutual Automobile Ins. Co., 514 So.2d 502 (La.App. 3 Cir.1987).

. Pursuant to a motion by defense counsel, the court granted a directed verdict as to lost wages.