# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-795


**WAYNE R. TRAHAN, ET AL.**

**VERSUS**

**ERNE PLESSALA, SR., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 103270
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED.**


**J. Wayne Landry**
**Attorney at Law**
**P. O. Box 12132**
**New Iberia, LA 70560-2132**
**(337) 369-4420**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Larry Verrett**
    **Wayne R. Trahan**

**Stephen F. Mestayer**
**Attorney at Law**
**P. O. Box 12340**
**New Iberia, LA 70562-2340**
**(337) 365-8181**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Gloria L. Plessala**
 **Erne Plessala, Sr.**

**James W. Schwing**
**Attorney at Law**
**411 Iberia St.**
**New Iberia, LA 70560**
**(337) 365-2445**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Gloria L. Plessala**
 **Erne Plessala, Sr.**

**SAUNDERS, Judge.**

This is an appeal regarding the extent of adverse possession. In 1969, the adverse possessors constructed a crawfish pond on the title land owners' property using levees. Sometime thereafter, the adverse possessors moved the soil from the spoil bank of a nearby canal to create a campsite. Later, the adverse possessors constructed a bridge over the canal and moved two camps onto the campsite.

The title land owners brought a petitory action against the adverse possessors. The trial court found that the adverse possessors proved their possession for 30 years to the extent of the outer levees of the crawfish pond. The trial court then ordered that the adverse possessors have a plat created to determine the extent of their adverse possession. After two failed attempts by the adverse possessor's expert to create a plat that complied with the trial court's judgment, the titled landowners were ordered to find an expert to create a plat. The plat of the titled landowners' expert did not include the campsite in the adverse possessors' adverse possession.

The trial court accepted the plat drawn by the titled landowners' expert to be in accordance with its judgment, cast the adverse possessors with all costs of the proceeding, and ordered that the adverse possessors remove their bridge and two camps from the campsite. The adverse possessors appeal. We affirm.

**<u>FACTS AND PROCEDURAL HISTORY</u>:**

Plaintiffs, Wayne Trahan and Larry Verrett, instituted a petitory action against Defendants, Erne Plessala, Sr. and his former spouse, Gloria Plessala, claiming ownership of certain tracts of land in rural Iberia Parish. Originally, the action was against Erne Plessala, Sr., who was divorced from Gloria Plessala. A trial on the merits between Plaintiffs and Erne Plessala was held on February 21, 2006. After a judgment was rendered, Gloria Plessala filed a petition for

intervention based on the fact that she and Erne never partitioned their community property, and, given this fact, she was a necessary party for proper adjudication of the matter. As such, the trial court granted Gloria Plessala's petition and allowed her to defend her property rights which could be affected by the suit. The only issue involved in the second trial that included Gloria was ownership of land not pertinent to these proceedings.

The trial court's September 20, 2006 judgment found that Plaintiffs had proven title to the eastern quarter of Lots 28 and 35, but that Defendants had established "title up to the outermost levees of the crawfish pond" located in portions of both Lots 28 and 35.

Lot 28 is bordered on the west by Marshfield Canal and the south by Lot 35. Lot 35 is also bordered on the west by Marshfield Canal. Thus, to reiterate, Lot 28 is located directly north of Lot 35 along the east side of Marshfield Canal.

The September 20, 2006 judgment went on to order that Defendants were to establish the boundary of their title gained through their adverse possession in Lots 28 and 35 by having a plat created "up to the outermost levees of his crawfish pond."

In accordance with the trial court's judgment, Defendants hired Ivan Garzotto to prepare a plat. Garzotto prepared a plat and had it recorded in the public records of Iberia Parish. Garzotto's first plat placed the boundary of Defendants' adverse possession to include a campsite they had constructed on the spoil bank of the Marshfield Canal. He did so because he considered the western levee of the crawfish pond to be the spoil bank of the Marshfield Canal between where the crawfish pond levees intersected with the spoil bank.

Plaintiffs filed a motion to correct survey in accordance with judgment. Simon Freyou, a licensed land surveyor, testified on behalf of the Plaintiffs. He disagreed with Garzotto's plat that the spoil bank should be included because it was not part of the crawfish pond. Freyou testified that the spoil bank was never part of the crawfish pond.

The trial court found that Garzotto's first plat did not comply with its judgment and declared it invalid. The trial court then ordered Garzotto to redo the plat with instructions that he:

> [Establish] the crawfish levee for the pond . . . if he is able to do so. If he is not able to establish [the entire] levee encompassing the crawfish pond, then he will stop at whatever point the levee stops and then proceed around the crawfish pond at the high water mark until he gets to another portion of existing levee around the crawfish pond. It is also obvious to the Court that [Defendants'] crawfish pond . . . was not in the spoil bank area at least between 1996 to present date. Further, there is no testimony that would support the uninterrupted adverse possession of [Defendants] in the spoil bank area of Lots 28 and 35. The Court also notes that the burden of proof for thirty (30) year adverse possession is on [Defendants].

The trial court also deferred Plaintiffs' request that Defendants be ordered to remove the camp(s) from the campsite as well as any other structures, including a bridge they had built to reach those camps, until Garzotto completed the plat in accordance with its judgment. Finally, the trial court ordered that Defendants pay the expert fees of Plaintiffs' expert, Freyou, and those of their own expert, Garzotto.

Garzotto then produced and recorded a second plat. It also included the campsite within the boundary drawn of Defendants adverse possession. Plaintiffs again filed a motion to correct survey in accordance with judgment. Once again, the trial court declared Garzotto's plat invalid. This time, rather than have Garzotto produce a third plat, the trial court ordered that Plaintiffs establish the

extent of Defendants' adverse possession in Lots 28 and 35 by having a plat created to the outermost levees of the crawfish pond. The trial court also included some instructions in its judgment as to which markers present in Garzotto's second plat that the Plaintiffs' expert was to use and others that he was to disregard.

Finally, after having David Moore create a plat based on the trial court's judgment, Plaintiffs sought to have that plat accepted by the court as correctly reflecting the extent of Defendants' adverse possession and ownership "up to the outermost levees of the crawfish pond." Moore's plat did not include the campsite as part of Defendants' adverse possession. The trial court accepted Moore's plat and signed a judgment on September 30, 2013, ordering Defendants to remove the bridge and camps located on the campsite in question within ninety days of the judgment. Further, the trial court cast Defendants with costs for the surveying fees and expert testimony fees of Moore, and again with the expert testimony fees of Freyou and Garzotto.

Defendants filed this appeal now before us. In this appeal, they allege two assignments of error.

**ASSIGNMENTS OF ERROR:**

1.  The trial court erred in failing to render a decision based on the evidence of adverse possession by Defendants and in failing to recognize the western boundary of the disputed tract to be the Marshfield Canal, a natural, visible boundary, as reflected by the exhibits and the clear and uncontroverted testimony of witnesses at the trial of this matter.

2.  The trial court erred in ordering Defendants to pay all of the survey costs, to remove their bridge and two campsite structures, and to pay all court costs.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Defendants contend in their first assignment of error that the trial court erred in failing to render a decision based on the evidence of their adverse possession for thirty years of the campsite and in failing to recognize the Marshfield Canal as being the western boundary of their thirty-year adverse possession. We do not agree.

> A titleholder may acquire more land than his title calls for by possessing property beyond his title without interruption and within visible bounds for thirty years. La.Civ.Code art. 794. The titleholder does not need to be in good faith or have just title to acquire the additional land. La.Civ.Code art. 3486. The party asserting acquisitive prescription bears the burden of proving *all* of the essential facts to support it. *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/2/94); 634 So.2d 1305, *writ denied*, 94-0813 (La.5/6/94); 637 So.2d 1056. The adverse possessor must prove that he intended to possess the property as owner. *Id*. "A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds." *Id*. at p. 3; 634 So.2d at 1307; La.Civ.Code art. 3476.

*Crowell Land & Mineral Corp. v. Funderburk*, 96-1123, pp. 3-4 (La.App. 3 Cir. 3/5/97), 692 So.2d 535, 537 (emphasis in original).

The existence of thirty-years acquisitive prescription of property by a party is a factual determination. *Id*. As such, prior to negating such a finding of fact under the manifest error standard, "an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Bonin v. Ferrellgas, Inc.*, 03-3024, pp. 6-7 (La. 7/2/04), 877 So.2d 89, 94-95 (citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993)).

In the case before us, the trial court's 2009 judgment states, "that the outer levees of Defendants crawfish pond, located on Lot 35, [establish their] possession for more than thirty years and Defendants[,] therefore[, own] it." Defendants argue

that they also own the campsite because it is located on the spoil bank, which forms the western, outer bank of the crawfish pond. Therefore, according to Defendants, Garzotto's surveys that include the campsite are both proper.

The trial court disagreed and rejected Garzotto's surveys stating:

> The evidence at the 2009 hearing fails to establish that [Defendants] adversely possessed, without interruption, for a period of thirty (30) years the area of the spoil bank along the Marshfield Canal where the camps are located. The evidence fails to establish that this area was a crawfish pond built by [Defendants] and surrounded by a levee built by [Defendants]. This area of the spoil bank[,] therefore[,] cannot be part of the survey since [the] property was not possessed for a period of thirty (30) years and it was not a crawfish pond surrounded by a levee built by [Defendants].

Defendants disagree pointing to the testimony of Erne Plessala, Sr., whose testimony contained the following exchanges:

Q    Now the area down in the southern part of that crawfish pond where you presently have a camp, the levee that's there that Mr. Freyou said he observed, is that the same levee that was there back when you originally build the crawfish pond?

A    That's the original levee.

Q    And that was built around 1966 or '67?

A    A little after that. About a couple years – a little after that, maybe '67, '68. I'm not sure the exact year, it's been so long.

. . . .

Q    And when did you build the levees?

A    Which ones you're talking about now?

Q    Any of them.

A    There – I started building them – I started over here back in the 60's or early 70's.

. . . .

Q    Erne, just to refresh so the judge will understand, you built the outside levee first when you first took over the property?

6

A    Yes.  When I took over the property, we started on the north side of the property and we went [east].  Then[,] we got as far as we could go on the [east] side.  It got bad.  We went south.  And we got all the way to the end of the property line back of the camp, then we came up west and completed the levee.

Q    So that levee – the levee is south of where your existing camp is?

A    Yes, sir.

Defendants then cite the testimony of Erne Plessala, Jr., the son of Erne Plessala, Sr. for the proposition that the trial court was manifestly erroneous in finding that the spoil bank was not adversely possessed by them.  Plessala, Jr. testified as follows:

Q    Do you know about the site where your daddy built his camp?

A    I know where it's at, yes.

Q    How was that built?

A    He knocked down the rest of the spill dirt that was there from the canal.

Q    From the Marshfield Canal?

A    Correct.  He finished knocking that down and then put the camp right there.

Q    Okay.  So it took up a very small part of the crawfish pond?

A    Correct.

According to Defendants, these testimonies were undisputed and establish that the spoil bank and eventual campsite was encompassed within the levees of the original crawfish pond that was finished in 1969.  As such, Defendants contend that this establishes them as owners of the campsite, and any finding to the contrary is manifestly erroneous.  Our review of the record indicates otherwise.

"A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is continuous,

7

uninterrupted, peaceable, public, unequivocal, and within visible bounds." *Phillips*, 634 So.2d at 1307; La.Civ.Code art. 3476. Thus, Defendants must establish that the spoil bank where the campsite is located was adversely possessed by them for 30 years. The trial court found that they did not, and there is evidence in the record that Defendants did not adversely possess the campsite for 30 years.

Terry Decoux, an employee of the Iberia Parish Government, is the caretaker for the Marshfield Boat Landing. He lives at the landing which is on the west side of the Marshfield Canal and directly across from the campsite. Decoux testified that he lived at that location since 1996. He went on to testify as follows:

Q    [S]ince 1996, has Mr. Plessala had crawfish ponds or anything?

A    Yeah, he had a crawfish pond.

. . . .

Q    Is there a bridge across the Marshfield Canal?

A    Yeah.

Q    Was that bridge there in 1996?

A    No, sir.

. . . .

Q    How about a camp? I'm going to show you a picture. I'm going to show you Exhibit Number 30. Do you recognize this?

A    Yes, sir.

Q    What is that?

A    I guess it's a camp.

Q    I'm going to show you Picture Number 29 – Exhibit 29. Do you see the camp in that photograph?

A    Yes, sir.

Q    And do you see the bridge down the canal?

8

A Yes, sir.

Q Were either that camp or that bridge – none of that was there in 1996?

A No, sir.

. . . .

Q Do you know if there was a crawfish pond where the camp was in 1997?

A To my knowledge, no.

Further, Plaintiffs' expert, Simon Freyou, testified that he interprets the aerial photographs taken in 1972 to indicate that "there is a very distinct separation there between what was happening on Lot 28 and what was happening on the – would be the northeast corner of Lot 35." The campsite at issue is located on the northeast corner of Lot 35. Freyou went on to testify:

Q You're testifying –

BY THE COURT:

  I'm sorry. Say that again. What happened was on the northeast corner of Lot 35?

BY THE WITNESS:

A What I see on the northeast corner of Lot 35 is different from what was happening on Lot 28. It looks like the activity stopped when it got to the boundary between Lot 28 and Lot 35.

BY MR. LANDRY:

Q And you're testifying now from the 1972 aerial?

A '72. And the same thing shows up on the '73 quadrangle that's already been entered into evidence.

. . . .

A Yes. Also, the levees that we looked at on the south side of the camp were much smaller than what the levees were in Lot 28.

9

Q      Is that the levee that you're talking – that you and Mr. Schwing and I walked?

A      Yes, we walked that levee.  And it's a small levee.  There was some work recently done on it because it was still muddy.

. . . .

Q      The Ground that the camp sits on, the photographs of the camp, that ground, that's not part of the crawfish pond, is it?

A      No, it's not.

These testimonies provide a reasonable factual basis for the trial court to find that the Defendants did not carry their burden to prove that they adversely possessed the campsite on the spoil bank for 30 years and, therefore, that Garzotto's surveys did not adhere to its 2009 judgment.  Erne Plessala, Jr. testified that the levees for the crawfish pond were built in 1969.  Decoux testified that in 1996, there was no crawfish pond where the campsite is located.  Freyou testified that the campsite was never part of the crawfish pond.  Thus, the trial court's judgment finding that Defendants adversely possessed the land to the outer levees of their crawfish pond for the required 30 years does not necessitate a finding that the campsite was also adversely possessed for 30 years.

Given the above, we cannot say that the trial court was manifestly erroneous in its judgment.  Accordingly, we find that assignment of error number one is without merit.

**<u>ASSIGNMENT OF ERROR NUMBER TWO</u>**:

Defendants, in their second and final assignment of error, argue that the trial court erred in ordering them to pay all costs of surveying and platting the extent of their adverse possession and of removing their bridge and camps, and to pay all court costs.  We disagree.

10

"It is well settled that a trial court has broad discretion in the assessment of court costs." *Davis v. Sonnier*, 96-515, p. 18 (La.App. 3 Cir. 11/6/96), 682 So.2d 910, 920. Additionally, "the trial court may assess the costs of a suit in any equitable manner and its assessment of costs can only be reversed by the appellate court upon a showing of an abuse of discretion." *Este' v. State Farm Ins. Cos.*, 96-99, p.14 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 859.

Here, Defendants argue that but for the trial court's erroneously invalidation of Garzotto's first plat, there would be no cause to order a second or third plat, and no cause to require them to pay for the creation of those plats. We found in the first assignment of error that the trial court committed no error in invalidating Garzotto's first plat. Thus, the basis for this argument, and the argument itself, is without merit.

Next, Defendants assert that because the trial court erroneously found that the campsite was not within their 30 year adverse possession, they should not have to remove the camps and bridge. Again, we found no error by the trial court, and, as such, we find no merit to this assertion.

Given the above, we find no abuse of the vast discretion of the trial court in assessing Defendants with payment all of the survey costs of platting the extent of their adverse possession and with court costs for the proceedings. Likewise we do not find any error by the trial court in requiring Defendants to remove their bridge and camps.

**CONCLUSION:**

Erne Plessala and Gloria Plessala, Defendants, raised two assignments of error: (1) that the trial court erroneously found that their adverse possession did not extend to the campsite where two of Erne Plessala's camps were located and (2)(a)

that the trial court erred in assessing them with the survey costs to create three plats to establish their adverse possession so that a boundary could be drawn, (2)(b) in assessing them with the court costs of the proceedings before the trial court, and (2)(c) in ordering removal of their bridge and camps from a campsite located next to their crawfish pond.  We find no merit to either assignment of error, affirm the trial court's judgment, and assess Erne Plessala and Gloria Plessala with the costs of these proceedings.

**AFFIRMED.**