# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-911

**TRACI L. HEBERT**

**VERSUS**

**BARRY'S AIR CONDITIONING, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2013-3473-B
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Marc T. Amy, and John E. Conery, Judges.

**AMY, J., dissents and assigns written reasons.**

**REVERSED AND RENDERED.**

Staci Knox Villemarette
Cloyd, Wimberly & Villemarette, LLC
Post Office Box 53951
Lafayette, LA  70505-3951
Telephone:  (337) 289-6906
COUNSEL FOR:
   Defendants/Appellees - State Farm Mutual Auto Insurance Company
   Barry's Air Conditioning, Inc., and BrianMeaux

Gregory A. Koury
Andrew P. Hill
Koury & Hill, LLC
Post Office Box 52025
Lafayette, LA   70505-2025
Telephone:  (337) 889-5409
COUNSEL FOR:
   Plaintiff/Appellant - Traci L. Hebert

**THIBODEAUX, Chief Judge.**

As Traci Hebert attempted to execute a right turn, a collision occurred between her vehicle and a Barry's Air Conditioning vehicle. Ms. Hebert filed suit alleging Barry's Air Conditioning was at fault and sought recovery for personal injuries and damage to her vehicle. Pursuant to a bench trial, the trial court allocated 70 percent fault to Barry's Air Conditioning and 30 percent to Ms. Hebert. However, the trial court also held that Ms. Hebert failed to establish a causal relationship between the accident and her injures and dismissed her claims. It also awarded costs to Barry's Air Conditioning. Ms. Hebert appeals the trial court's judgment regarding causation and costs. For the reasons that follow, we reverse the trial court's judgment and award $50,000.00 in damages to Ms. Hebert.

I.

**ISSUE**

We must decide:

1. whether the trial court erred in finding that Ms. Hebert failed to establish that the accident caused her injuries;

2. whether the trial court's judgment awarding "costs associated with this matter" conflicted with its previous ruling awarding Ms. Hebert costs for her Motions in Limine that were granted in her favor.

II.

**FACTS AND PROCEDURAL HISTORY**

This action is a vehicular accident that occurred between Ms. Hebert and Brian Meaux, a Barry's Air Conditioning's employee. Mr. Meaux was driving a company vehicle in the course and scope of his employment at the time of the

accident. The accident occurred as Ms. Hebert was driving on a single lane road and attempted to make a right turn into a parking spot. To avoid hitting a utility pole, she veered to the left and made a wide right turn. Mr. Meaux falsely assumed Ms. Hebert was making a left turn and attempted to pass her on the right. The two vehicles collided. Photographs from the scene reflect that Ms. Hebert's vehicle was damaged on the passenger's side, and the company's vehicle was damaged on the driver's side. The damage is consistent with Mr. Meaux attempting to pass Ms. Hebert on the right side.

The responding officer, Tyler Ebling, did not issue a citation at the scene. However, his supervisor, Sergeant Brent Taylor, later ordered him to revise his report, assign fault to Mr. Meaux, and issue a citation to him for careless operation. At the scene, Ms. Hebert reported to Officer Ebling that the accident caused her to hit her head on her driver's side window. She testified that she suffered a headache because of the accident, and experienced back and neck pain later that night.

A day after the accident, Ms. Hebert visited her chiropractor, Dr. Tiffany Pratt, complaining of pain in her neck, back and shoulder, and headaches. Dr. Pratt had treated Ms. Hebert numerous times in the past for various ailments, including neck and back pains. The day after the accident was her first visit with Dr. Pratt in nearly eight months. Dr. Pratt reported that Ms. Hebert had a "good prognosis" before the accident and remarked, "apparently she was doing better" because she did not return until the day after the accident.

Dr. Pratt diagnosed Ms. Hebert with suffering from cervical nerve root compression, cervical sprain/strain, lumbar spinal compression, lumbar/sacroiliac joint disorder, muscle spasm, and segmental dysfunction of the

2

T-7 vertebrae. Her diagnoses were based on objective findings of injury. Dr. Pratt testified that the injuries were caused by, and did not predate, the accident. Her diagnosis began a course of treatment that lasted nearly four years, and included a referral to a neurologist, Dr. Fabian Lugo.[1]

After trial, the trial court issued a written ruling that assigned 70 percent fault to Barry's Air Conditioning and 30 percent to Ms. Hebert. The court, however, also determined Ms. Hebert failed to establish a causal relationship between the accident and her injuries. The court reasoned that neither Ms. Hebert's chiropractor nor her neurologist sufficiently linked her injuries to the accident.[2] The court dismissed her claims and awarded Barry's Air Conditioning costs of the proceeding. Ms. Hebert now appeals the trial court's judgment regarding causation and costs.[3]

## III.

## STANDARD OF REVIEW

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991) (citing *Mart v. Hill*, 505 So.2d 1120 (La.1987)). Under this standard of review, an appellate court cannot reverse a trial court's finding of fact unless the record shows the finding is manifestly erroneous or

---

[1]Dr. Pratt also treated Ms. Hebert for carpal tunnel. The parties stipulated that her carpal tunnel symptoms were not related to the accident.

[2]In full, the trial court wrote: "Unfortunately for plaintiff; the evidence presented during this trial has failed to establish medical causation; thus, the plaintiff has failed to sufficiently prove any of the claimed damages resulted from this collision. Although there was evidence of plaintiff seeking medical treatment following the accident, neither the treating chiropractor nor the treating neurologist sufficiently linked plaintiff's injuries to the motor vehicle accident at issue."

[3]We note that neither party appealed the trial court's allocation of fault. Thus, our ruling is focused solely on causation, damages, and costs.

3

"clearly wrong." *Snider v. La. Med. Mut. Ins. Co.*, 13-579 (La. 12/10/13), 130 So.3d 922, 938. To reverse a factfinder's determination, an appellate court must review the record and find that: (1) "a reasonable factual basis does not exist for the finding of [fact]," and (2) "the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id.* (quoting *Stobart v. State, Dep't Transp. & Dev.*, 617 So.2d 880, 882 (La.1993)). Accordingly, we review the record to determine whether the trial court's conclusion was reasonable, not whether it was right or wrong. *Id.*

IV.

## LAW AND DISCUSSION

A.        Causation

Ms. Hebert argues the trial court erred in finding she did not establish that the accident caused her injures. She argues that although she had neck and back ailments in the past, she was in good health when the accident occurred. She notes her chiropractor, Dr. Pratt, testified that she did not complain of neck or back pain during her last visit before the accident, which occurred eight months prior. Additionally, she notes that Dr. Pratt opined that her injuries were caused by the accident. Further, she avers that Barry's Air Conditioning failed to present countervailing evidence that her injuries were not caused by the accident.[4]

In opposition, Barry's Air Conditioning contends that the trial court was correct in ruling Ms. Hebert did not establish by a preponderance of the

---

[4]Ms. Hebert also contends that the trial court should have applied the *Housley* presumption. This presumption, which was set forth in *Housley v. Cerise*, 579 So.2d 973 (La. 1991), holds that a plaintiff's injuries is presumed to have resulted from the accident if the plaintiff was in good health before the accident, not in good health after the accident, and the injuries continuously manifested themselves thereafter. Ms. Hebert's request for us to apply the *Housley* presumption is moot because we find causation to be clear.

evidence a causal connection between the accident and her injuries. It maintains that the accident did not cause her injuries, and her medical treatments after the accident were for injuries that predated the accident. It also claims that neither Ms. Hebert's chiropractor nor her neurologist testified that her injuries were related to the accident.

In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the subject accident and the alleged injuries. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615 (La. 2/20/95), 650 So.2d 757. A plaintiff must prove causation by a preponderance of the evidence. *Morris v. Orleans Parish School Bd.*, 553 So.2d 427 (La.1989). This burden can be met by proving through medical testimony that it was more probable than not the injuries were caused by the accident. *Maranto*, 650 So.2d 757. A determination of medical causation is a finding of fact and cannot be disturbed absent manifest error. Testimony from a treating chiropractor is admissible to establish causation. *White v. Progressive Sec. Ins. Co.*, 08-926 (La.App. 3 Cir. 2/4/09), 6 So.3d 860 (holding that the treating chiropractor was qualified as an expert to give her conclusion regarding causation).

The trial court ruled that Dr. Pratt's testimony did not sufficiently link Ms. Hebert's injury to the accident. Our reading of Dr. Pratt's testimony and the record, however, leads us to conclude that the trial court manifestly erred.

Dr. Pratt treated Ms. Hebert for occasional neck and back pains since 2006. Dr. Pratt was familiar with Ms. Hebert's medical history, treatments, and symptoms. Ms. Hebert's last visit with Dr. Pratt was eight months before the accident. After that visit, Dr. Pratt reported that Ms. Hebert's prognosis was good and recommended a follow-up visit. Dr. Pratt testified that "apparently she was

5

doing better and didn't come back." The next time Dr. Pratt saw Ms. Hebert was the day after the accident. There is no evidence in the record that Ms. Hebert saw any other doctor between her last visit with Dr. Pratt before the accident, and her visit the day after the accident. Further there is no evidence that Ms. Hebert's condition worsened from her positive prognosis before the accident.

After the accident, Ms. Hebert reported to the responding deputy that the accident caused her to hit her head on the driver's side window. The day after the accident, she told the same to Dr. Pratt and complained of neck, back and shoulder pains, and headaches. Dr. Pratt conducted a full examination, and noted objective signs of injury, including muscle spasms in her neck and back. Dr. Pratt testified that these symptoms did not pre-date the accident, and were consistent with the nature and severity of the accident.[5] This began treatment that lasted nearly four years characterized by improvements, setbacks, objective findings of injury on each visit, and a referral to a neurologist. Further, Dr. Pratt testified that she did not believe Ms. Hebert was malingering and her treatments were necessary to relive pain caused by the accident.

Dr. Pratt's testimony was unequivocal. She opined that Ms. Hebert's condition was caused by the accident. Her opinion was based on her medical experience, knowledge of Ms. Hebert's medical history, and objective findings of injury. She stated that x-rays taken after the accident showed that Ms. Hebert's condition became worse since her last visit before the accident, and that "I really don't think that would have happened otherwise." She further testified that "I feel like [her injures are] due to the accident." We also note that Barry's Air

---

[5]In full, Dr. Pratt testified: "It has been awhile since I had seen her, so I don't think it was necessarily something that had been going on."

Conditioning did not offer any evidence to contradict Dr. Pratt's testimony nor did it request an independent medical examination to advance its position. This leads us to conclude that the trial court manifestly erred in ruling that Ms. Hebert did not establish a causal relationship between the accident and her injuries.

Regarding damages, prior to trial, Ms. Hebert stipulated her causes of action did not exceed $50,000.00, exclusive of interest and costs. The medical records reflect that Ms. Hebert incurred $20,585.79 in medical expenses.[6] Therefore, we award her $20,585.00 in medical expenses. Additionally, Ms. Hebert endured over 200 treatments which were related specifically to the accident over four years. Ms. Hebert testified that she has difficulty sitting for long periods, is no longer able to coach volleyball or ride horseback, and cannot perform chores around her home because of pain. Given that Ms. Hebert stipulated that her damages did not exceed $50,000.00 and accounting for her medical expenses, the most we can award in general damages is $29,415.00. Accordingly, we award $29,415.00 in general damages for a total of $50,000.00, plus interest from the date of judicial demand. The total award is subject to a thirty-percent reduction due to the trial court's allocation of Ms. Hebert's fault, which she did not appeal. *See, e.g. Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/3/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999 (awarding $35,000.00 for neck and back soft tissue injuries and headaches that required ten months of treatment); *Stelly v. Zurich American Ins. Co.*, 11-1144 (La.App. 3 Cir. 2/1/12), 83 So.3d 1225 (awarding for $43,000.00 for soft tissue neck and back injuries that required twenty-nine months of conservative chiropractic treatment).

---

[6]Ms. Hebert's brief states, "[h]er treatment with Dr. Pratt cost $20,595.79." This appears to be a typo. The record Ms. Hebert cites reflects that her medical expenses were $20,585.79, which is a $10 difference from the amount cited in her brief.

7

**B.**     <u>Costs</u>

Ms. Hebert argues that the trial court erred in taxing all costs against her. She contends that taxation of all costs contradicts the trial court's previously awarding her costs associated with two pretrial motions that were granted in her favor.

Conversely, Barry's Air Conditioning asserts that the trial court has the discretion to cast costs, and it decided to cast all costs onto Ms. Hebert. The trial court's ruling, Barry's Air Conditioning argues, should not be disturbed unless it abused its discretion.

Generally, appellate courts shall not reverse a trial court's decision to cast a party with court costs, absent a showing of abuse of discretion. *Trahan v. Plessala*, 14-795 (La.App. 3 Cir. 2/4/15), 158 So.3d 209. Louisiana Code of Civil Procedure Article 2164, which deals with appeals, provides, in pertinent part, that "[t]he court may award damages for frivolous appeal; and may tax the costs of the lower and appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable." Further, when a trial court judgment is reversed on appeal, the party that loses on appeal is generally obligated to pay all costs of the trial and the appeal, even though that party won at the trial level. *See*, *e.g. Vernon Co. v. Carter*, 254 So.2d 297 (La.App. 4 Cir. 1971).

In view of this court's reversal of the trial court's judgment, all trial and appellate costs are assessed against Barry's Air Conditioning and its insurer, State Farm.

V.

## **CONCLUSION**

For the foregoing reasons, the trial court's judgment as to causation and costs is reversed. Traci L. Hebert is awarded $50,000.00, plus interest from the date of judicial demand. The total award is reduced by 30 percent because of the trial court's allocation of fault to Ms. Hebert, which was not appealed. Additionally, all trial and appellate costs are assessed against Barry's Air Conditioning and its insurer, State Farm.

**REVERSED AND RENDERED.**

NUMBER 16-911

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

TRACI L. HEBERT

VERSUS

BARRY'S AIR CONDITIONING, INC., ET AL.

AMY, J., dissenting.

I respectfully dissent from the majority opinion as I find that this case turns on the standard of review. As referenced by the majority, the relevant inquiry under the manifest error standard of review "is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one." *Purvis v. Grant Parish School Bd.*, 13-1424, p. 4 (La. 2/14/14), 144 So.3d 922, 926.

However, after review under that deferential standard, I find that the record supports the trial court's ruling that Ms. Hebert failed to prove medical causation by a preponderance of the evidence. In particular, it is important to note that the plaintiff had a long history of treating with Dr. Pratt for neck and back pain, but had last visited with Dr. Pratt eight months prior to the accident. Moreover, and according to Dr. Pratt's medical records and testimony, she had recommended that Ms. Hebert return for further treatment, yet she did not return during that eight-month period. Further, during her deposition, Dr. Pratt stated the following:

> I feel like it is due to the accident. I saw her prior to the accident; I also saw her after. In addition to -- I mean, we took X-rays early on in treatment and after the accident, and it did get worse. I mean, I don't - - I really don't think that would have happened otherwise.

However, aside from the X-ray taken after the accident, the only other X-ray result included in Dr. Pratt's medical records is from Ms. Hebert's initial consultation in October 2006, nearly six years prior to the accident. Additionally, Dr. Pratt

testified that a post-accident MRI performed in October 2012 showed "[n]othing real significant" and merely demonstrated a degenerative condition predating the accident.

Thus, given Ms. Hebert's extensive history of neck and back pain, the trial court could have reasonably concluded that Ms. Hebert's symptoms were a continuation of her prior condition and had simply not resolved at that time. Furthermore, in addition to Dr. Pratt's general statement as to a worsening of symptoms as an indicator of causation, Dr. Lugo's records do not further clarify the issue of causation.

For these reasons, I find no manifest error in the trial court's determination. Accordingly, I would affirm the trial court's judgment.