# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-602

**SOUTHERN MARBLE SPECIALTIES, INC.**

**VERSUS**

**MITCHELL WAYNE CHOLLEY, INDIVIDUALLY, THE FIRM OF LOUISIANA PROPERTY & CASUALTY, LLC AND ABC INSURANCE COMPANY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 21-1493
HONORABLE JAMIE BLAIR BICE, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

**Savoie, J., concurs and assigns written reasons.**

**REVERSED.**

Joseph L. McReynolds
Mark P. Allain, Jr.
Deutsch, Kerrigan, LLP
755 Magazine Street
New Orleans, LA 70130-3672
(504) 581-5141
COUNSEL FOR DEFENDANTS/APPELLANTS:
   Mitchell Wayne Cholley
   The Firm of Louisiana Property & Casualty, LLC

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, LLC
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLEE:
   Southern Marble Specialties, Inc.

**PERRET, Judge.**

Plaintiff, Southern Marble Specialties, Inc. ("Southern Marble"), sued defendants, Mitchell Cholley and The Firm of Louisiana Property & Casualty, L.L.C. (collectively "Defendants"), for professional negligence of an insurance agent for allegedly reducing its business income and extra expense coverage under a commercial property policy without its knowledge or consent.

After a one-day bench trial, the trial judge rendered a judgment on May 24, 2022, in favor of Southern Marble "in the amount of $27,393.60, as well as costs of court, including the expert fee of Robert A. Ehlers in the amount of $8,500.00, plus legal interest from date of judicial demand." Defendants now appeal alleging the trial judge erred in: (1) ruling that the Lloyd's of London insurance policies issued in 2018 and 2019 were not renewals of the original policy issued in November 2017; (2) denying their exception of peremption; (3) finding them liable for eighty percent of the stipulated damages totaling $34,242.00; (4) assessing them with the expert fees of Mr. Ehlers; and (5) refusing to rule on, or consider, their application to reduce the estimated costs of the appeal by $1,998.00.[1] For the following reasons, we reverse upon finding that Southern Marble's claims against Defendants were not filed within three years of the alleged negligent act and, thus, are perempted under La.R.S. 9:5606.

**PROCEDURAL HISTORY AND FACTS:**

On August 18, 2021, following Hurricane Laura on August 27, 2020, Southern Marble filed a petition against its insurance agent, Mitchell Cholley, and his agency, The Firm of Louisiana Property & Casualty, L.L.C., for damages

---

[1] At the March 7, 2023 oral arguments, Defendants acknowledged that the Lake Charles City Court reimbursed them for the excessive court costs. Accordingly, this issue is now moot.

allegedly sustained after Defendants reduced its business income and extra expense ("BI/EE") insurance coverage without its knowledge or consent. Specifically, Southern Marble's petition states, in pertinent part (emphasis in original):

4.

In November of 2016, Plaintiff initially secured a policy of insurance from Defendants, . . . through Anchor Specialty Insurance Company. When said policy was expiring, Defendants placed Plaintiff's renewal policy through a different insurance company.

5.

For reasons unknown to Plaintiff, Defendants secured coverage for the 2017-2018 policy period which was NOT identical to the coverage which had been initially purchased by Plaintiff. Although the property damage and contents (personal property) policy limits remained the same, Defendants reduced the business interruption coverage limits substantially without the knowledge or consent of Plaintiff.

6.

At all relevant times, Plaintiff believed it was insured through a policy of insurance identical to the Anchor Specialty policy which would have provided it additional coverage for the business interruption loss caused by Hurricane Laura.

7.

While Plaintiff was performing its obligations under the insurance policy by reporting hurricane related damages, it[] was informed that [Defendants] had significantly reduced its business interruption coverage when the policy was renewed. For some reason, Defendants failed to secure the same coverage for business interruption that was secured with the initial policy.

On October 21, 2021, Defendants filed an answer with affirmative defenses wherein they argued, in pertinent part (reference to exhibits omitted):

17.

Plaintiff, through its agent Chuck Kuehn, agreed to bind coverage through Central Louisiana Insurance Company ("CLIC"), a surplus lines broker, with a policy underwritten by Lloyd's of London, for the 2017-2018 policy year. The Lloyd's policy provided reduced

2

BI/EE coverage in the amounts of $3,123 for Plaintiff's office and showroom and $7,800 for Plaintiff's storage building, for a total BI/EE coverage of $10,923.

18.

Defendant Cholley fully informed and advised Plaintiff, through Chuck Kuehn, of the reduced BI/EE coverage. Mr. Kuehn accepted all of the terms, conditions and proposed coverages of the Lloyd's policy and signed the application for the Lloyd's policy on November 7, 2017.

19.

Plaintiff agreed to the next three consecutive renewals of the Lloyd's policy, through CLIC, for the 2018-2019 policy year, the 2019-2020 policy year, and again for the 2020-2021 policy year, all with the same BI/EE coverage limits.

On November 29, 2021, Defendants filed a peremptory exception alleging that Southern Marble's claims are "perempted on their face" because Southern Marble "had knowledge of the change in BI/EE coverage on November 7, 2017 and waited three years before filing this suit on August 18 of 2021." On January 4, 2022, Southern Marble filed an opposition to the exception alleging that "Defendants' Exception of Prescription is completely without merit and should be overruled and dismissed."

A hearing on the peremptory exception was held on January 12, 2022. After hearing the testimony of Mr. Cholley and Mr. Kuehn, the trial judge denied the peremptory exception upon finding that Mr. Cholley issued "a new policy each and every year" and that the policies were not renewals. On March 23, 2022, Defendants filed a motion for reconsideration (to be heard and ruled on at trial) wherein they argued "that the policies were in fact renewal policies based on the definition of 'renewal' in La.R.S. 22:1267" because "[t]he same policy forms in the first Lloyd policy were re-issued in the two subsequent Lloyd policies —

3

repeated in substance and in fact — and with the same coverage amounts, including the coverages for Business Income and Extra Expenses, issued by the same group of insurers."

After a bench trial, held on March 31, 2022, the trial judge denied Defendants' motion for reconsideration and rendered judgment in favor of Southern Marble, finding Defendants liable for eighty percent of the difference in coverage limits and assessing twenty percent fault to Southern Marble for failing to discover the Defendants' negligent and/or intentional act. In his May 11, 2022 written opinion, the trial judge provided the following facts (emphasis in original):

> Mr. Chuck Kuehn ("Kuehn") is the owner of Southern Marble. He has been in business in Lake Charles, Louisiana for 37 years, with revenues of approximately 1.7 million dollars per year in sales. Kuehn utilized the services of Billy Gage with Arthur Gallagher Insurance as his agent for his insurance needs. Mr. Gage covered Southern Marble with a Liberty Mutual policy for many years. Because Mr. Gage generally only wrote high dollar policies, ultimately in 2016, Kuehn moved all of his insurance needs, business, homeowner's, auto, commercial rental property, etc. to an agent, both new in the insurance business and also his neighbor and personal friend, Mitch Cholley at The Firm of Louisiana, LLC ["The Firm"].
>
> Mr. Kuehn met with Mr. Cholley at the beginning of 2016 and purchased policies of insurance that covered Southern Marble for liability and business property losses. Cholley did not write (or continue) the policy with Liberty Mutual, Kuehn's insurer for many years previously, but instead Cholley wrote a new policy with Anchor Insurance. The Anchor policy included, among other things, business income coverage with policy limits for both of Southern Marble's buildings at $43,700.00. After this initial transition from Gallagher to The Firm, Kuehn never met with Cholley again face-to-face regarding any of his insurance needs, until after Hurricane Laura in 2020.
>
> At the end of the first policy period with Anchor, Kuehn received an email directly from Anchor Insurance informing that his premium was going to increase by $7,000.00 per year. Kuehn emailed Cholley asking for an explanation for the premium increase. Cholley informed Kuehn that he would begin to shop for other coverage. Ultimately, Kuehn learned that the premium increase was because Cholley had initially misclassified Southern Marble's business in the application submitted to Anchor Insurance.

4

Apparently, after a site inspection of Southern Marble buildings by Anchor, the business was then properly classified, causing the premium increase from $14,000 annually to $21,000 annually (basically the same premium amount as with Liberty Mutual). Anchor recommended to Cholley that the business interruption coverage limits should be $200,000, almost five (5) times more than the limit of $43,700 in the policy written by Cholley, which was Anchor's explanation to Cholley for the increase in premium. Cholley never shared those communications with Kuehn or anyone at Southern Marble.

Hurricane Laura made landfall in Lake Charles, Louisiana on August 27, 2020. Southern Marble sustained damages and Kuehn attempted to collect on his policy for his business income losses. At that time, only weeks after the hurricane, Kuehn learned that the B.I. coverages were lowered by Cholley from $43,700 to $3,000 per month, with a three (3) month maximum. Kuehn did not know his coverage had been lowered. Cholley never personally informed him of the reduction, nor did he ever sign anything agreeing to the reduction in coverage. Southern Marble collected a total of $9,458 for its business interruption claim stemming from Hurricane Laura.

[Southern Marble] filed suit against [Defendants] for negligence in the handling of its insurance account and for the damages and losses sustained as a result of Hurricane Laura which would have been covered by the policy of insurance had it been properly secured. The parties stipulated to the amount of damage suffered by Southern Marble due the reduction by Cholley in business interruption coverage was $34,242. The [D]efendants believe no negligence was committed on their part whatsoever. It is their contention the Kuehn either knew or should have known what the business interruption limits were under the Lloyd's policies that Kuehn purchased. Liability was at issue.

On appeal, Defendants allege the following assignments of error:

A. The trial court erred as a matter of law in ruling that the Lloyd's policies issued in 2018 and 2019 were not renewals of the original Lloyd's policy issue[d] in 2017.

B. The trial court erred as a matter of law and fact in denying Appellants' exception of peremption.

C. The trial court committed a manifest error of fact and a reversible error of law in holding Appellants comparatively liable for 80% fault in the assessment of Southern Marble's damages.

D. The trial court erred as a matter of law, or otherwise abused its discretion, in assessing Appellants with the expert fee of Mr. Ehlers.

**STANDARD OF REVIEW:**

Questions of law, such as the proper interpretation of a statute, are reviewed by the appellate court under the de novo standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36. "Legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves primarily the search for the legislature's intent." *Detillier v. Kenner Reg'l Med. Ctr.*, 03-3259, p. 3 (La. 7/6/04), 877 So.2d 100, 103. As further stated in *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Prop. Owners*, 04-1674, pp. 6-7 (La. 2/4/05), 894 So.2d 325, 330-331 (internal citations omitted):

> The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.

"Preemption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La.Civ.Code art. 3458. "[P]eremption may not be renounced, interrupted or suspended." La.Civ.Code art. 3461. The party who files the exception of peremption bears the burden of proof, unless the matter is facially barred. *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065. In the event that peremption is evident from the face of the pleadings, the burden of proof shifts to the plaintiff. *Id.* If evidence is introduced, the trial "court's findings of fact are reviewed under the manifest error-clearly wrong standard of review." *Id.* at 20.

6

**DISCUSSION:**

Defendants allege in their first assignment of error that the trial court erred as a matter of law in ruling that the Lloyd's of London insurance policies issued in 2018 and 2019 were not renewals of the original Lloyd's policy, signed on November 7, 2017. Specifically, Defendants argue that "Mr. Kuehn renewed the same coverages under identical policies, for the same premiums, issued by the same Lloyd's of London group of underwriters, in 2018 and again in 2019[,]" and that "[b]oth renewal policies showed the same BI/EE limits in their respective Declarations Pages, as did the identical application forms Mr. Kuehn signed when he renewed the Lloyd's of London coverages."

In response, Southern Marble argues that "*this* lawsuit does not deal with any actions of Mitch Cholley or The Firm in connection with any of the earlier policies because none of the earlier policies were in effect when Hurricane Laura struck." Southern Marble argues that the 2017 and 2018 policies, "which did not provide coverage, [are] obviously of no moment and completely irrelevant to *this suit*."

Louisiana Revised Statutes 9:5606, titled "Actions for professional insurance agent liability," states, in pertinent part (emphasis added):

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, **in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.**

7

Thus, "La.R.S. 9:5606 provides two preemptive periods: one year from the date of the alleged negligent act or omission; or, one year from the date the negligence was discovered or should have been discovered, as long as that date is within three years of the alleged negligent act or omission." *Halmekangas v. ANPAC La. Ins. Co.*, 11-1293, p. 7 (La.App. 4 Cir. 6/8/12), 95 So.3d 1192, 1197, *writ denied*, 12-1542 (La. 10/12/12), 98 So.3d 873.[2] Therefore, from the clear and unambiguous language of La.R.S. 9:5606, it was the intent of the Legislature to set forth a precise peremptive period of three years to govern the filing of claims for professional negligence of an insurance agent.

In this case, Southern Marble's petition was filed on August 18, 2021. Therefore, the date of negligence or discovery must have occurred within one year prior to this date. If the negligence was only discovered within one year prior to this date, the negligent act must have occurred within the last three years. In Southern Marble's petition, it identified the 2017-2018 policy period (signed on November 7, 2017) as the date when the Defendants allegedly reduced the BI/EE limits by procuring the first Lloyd's of London policy with the lower limits without Mr. Kuehn's knowledge or consent, i.e. the "alleged act, omission, or neglect[.]" Specifically, the petition states that the Defendants: "secured coverage for the 2017-2018 policy period which was NOT identical to the coverage which had been initially purchased by Plaintiff. Although the property damage and contents

---

[2] In *Teague v. St. Paul Fire and Marine Ins. Co.*, 07-1384, p. 13 (La. 2/1/08), 974 So.2d 1266, 1275, the court defined the "date of discovery" as follows:

> The "date of discovery" from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.

8

(personal property) policy limits remained the same, Defendants reduced the business interruption coverage limits substantially without the knowledge or consent of Plaintiff." Accordingly, under the three-year peremption period in La.R.S. 9:5606, Southern Marble's claims for professional negligence of an insurance agent are perempted on the face of the petition. Thus, the burden shifts to Southern Marble to show the action was not perempted.

Southern Marble argues that the policies signed by Mr. Kuehn in 2017 and 2018 are irrelevant to this case because the loss occurred during the 2019-2020 policy, and Southern Marble argues that the 2019-2020 policy was a new policy, not a renewal. We disagree and find the 2019 policy is a renewal policy under La.R.S. 22:1267. The Louisiana Legislature set forth the definition of a "renewal" policy applicable to commercial liability insurance policies in La.R.S. 22:1267, which states as follows:

> B. For the purposes of this Section, the following terms shall mean:
>
> (5) "Renewal" or "to renew" means the issuance of or the offer to issue by the insurer a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice extending the term of an existing policy for a specified period beyond its expiration date.

In this case, the record indicates that on November 8, 2016, Mr. Cholley secured $43,700.00 in BI/EE coverage for Southern Marble with Anchor Specialty Insurance. However, when the Anchor Specialty policy came up for renewal in October 2017, Mr. Cholley secured a new commercial policy issued by Lloyd's of London that reduced Southern Marble's combined BI/EE coverage from $43,700.00 to $10,923.00. Mr. Kuehn, owner and agent acting on behalf of Southern Marble, signed this new insurance application for the 2017-2018 policy year on November 7, 2017. It is undisputed that Mr. Kuehn signed the same

coverages under identical policies, for the same premiums, issued by Lloyd's of London, in 2018, and again in 2019. Accordingly, based on La.R.S. 22:1267, we agree with Defendants that the trial court legally erred in finding that the 2019 policy was a new policy and not a renewal to the original Lloyd's of London policy signed in 2017.

Because Southern Marble did not file its petition against Defendants until August 18, 2021, well beyond the three-year peremptive period as set forth in La.R.S. 9:5606, its claims against them are perempted. Moreover, even if we were to consider Southern Marble's discovery of the negligence, the supreme court, in *McKernan v. ABC Ins. Co.*, 21-859 (La. 11/23/21), 328 So.3d 69, held that it is the insured's obligation to read the policy. In *McKernan*, the supreme court found that the plaintiff had constructive knowledge of her claims against her insurance agent at the time she received the initial insurance policy, which was in December 2008. *Id.* The supreme court held, in pertinent part:

> This court has held that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents. *Seruntine v. State Farm Fire & Cas. Co.*, 10-1108 (La. 9/3/10), 42 So.3d 968; *Isidore Newman School v. J. Everett Eaves, Inc.*, 09-2161, p. 12 (La. 7/6/10), 42 So.3d 352, 359. In this case, there are no facts under which Ms. McKernan's claims against Brad Bourg and Bourg Insurance Agency, Inc. are not perempted. The district court correctly noted that Ms. McKernan received a copy of the initial insurance policy in December 2008. Additionally, Ms. McKernan received copies of every yearly renewal policy covering her property through 2016. A simple review of the initial policy in 2008, as well as the numerous following renewal policies, would have revealed 250/100/250 flood coverage limits. Under these circumstances, Ms. McKernan knew or should have known of the flood policy limits in December 2008 when she received a copy of the initial policy. Moreover, even if we were to consider the most recent policy renewal date, which occurred in December 2015, plaintiff's claims would still be perempted because she did not file suit until May 2017–well beyond the one-year discovery date set forth in La.R.S. 9:5606. Accordingly, the writ is granted. The judgment of the court

> of appeal is reversed, and the judgment of the district court sustaining the exception of peremption is reinstated.

*McKernan,* 328 So.3d at 69-70 (per curiam). Based on *McKernan*, Southern Marble knew or should have known of its deficient BI/EE coverage no later than February 2018, when the copy of the new Lloyd's of London policy was mailed to it.

It is also worth noting that we find the case, *Theriot v. Dwight W. Andrus Ins., Inc.*, 21-431 (La.App. 3 Cir. 12/15/21), 332 So.3d 224, *writ denied*, 22-97 (La. 3/15/22), 334 So.3d 395, distinguishable from the facts of this case. In *Theriot*, the original insurance policy for plaintiff's vessel was procured in February 2017. When the existing policy was up for renewal in February 2018, plaintiff agreed to renew the existing policy but discussed a plan with his agent to procure additional coverage for the vessel. Plaintiff received a copy of the renewal policy on April 11, 2018. On November 27, 2018, the vessel sank, prior to the agent procuring the larger insurance policy. On November 26, 2019, Plaintiff filed a petition against his insurance agent for failure to procure the larger policy within a year of the sinking, but more than a year from the receipt of the smaller renewal policy. The insurance agent argued the claim was perempted under La.R.S. 9:5606. Although the trial court agreed with the agent that plaintiff's claim was perempted under La.R.S. 9:5606, this court reversed upon finding that the "date of discovery" was the day the ship sunk, November 27, 2018. However, in *Theriot*, unlike the instant case, the three-year peremptive period did not come into play since the negligent act occurred *less than* three years prior to the petition being filed. In fact, even the original insurance that was procured was handled two years and nine months

11

before the petition was filed. Accordingly, we find the *Theriot* case has no bearing on this case.

Because we have determined that the instant case is perempted pursuant to La.R.S. 9:5606, we pretermit discussion of the remaining assignments of error. "Further, when a trial court judgment is reversed on appeal, the party that loses on appeal is generally obligated to pay all costs of the trial and the appeal, even though that party won at the trial level." *Hebert v. Barry's Air Conditioning, Inc.*, 16-911, p. 9 (La.App. 3 Cir. 8/31/17), 226 So.3d 1222, 1228. In view of this court's reversal of the trial court's judgment, all trial and appellate costs are assessed against Southern Marble.

Despite this conclusion, however, we note that Defendants' actions in knowingly obtaining BI/EE coverage that was significantly insufficient to meet Southern Marble's needs or expectations, without specifically informing Southern Marble or explaining to it the reduced coverage procured, are reprehensible and not excused by the result of this litigation.

**CONCLUSION:**

Based on the foregoing, we find the trial court erred as a matter of law in concluding that the 2018 and 2019 Lloyd's of London policies were not renewals of the original policy issued in 2017. As such, we find the trial court erred as a matter of law in denying Defendants' exception of peremption. Thus, the judgment of the trial court is reversed, the exception of peremption is granted, and, accordingly, Southern Marble's claims are dismissed. All trial and appellate costs are assessed against Southern Marble Specialties, Inc.

**REVERSED.**

12

SOUTHERN MARBLE SPECIALTIES, INC.

VERSUS

MITCHELL WAYNE COLLEY, INDIVIDUALLY, THE FIRM OF
LOUISIANA PROPERTY & CASUALTY, LLC AND ABC INSURANCE
COMPANY

**\*\*\*\*\*\*\*\*\***

**SAVOIE, J. concurs and assigns written reasons.**

I respectfully disagree with the majority's conclusion that the peremptive period began to run on the date that Southern Marble signed or received the 2017-2018 policy, after it found that the 2019-2020 policy was a "renewal" policy; however, I concur in the conclusion that Southern Marble's claims against Defendants are perempted and should be dismissed.

Southern Marble's claims arise out of the following duty owed by an insurance agent:

> an insurance agent owes a duty of "reasonable diligence" to his customer. This duty of "reasonable diligence" is fulfilled when the agent procures the insurance requested. Jurisprudence has suggested that an insured has a valid claim against the agent when the insured demonstrates that: "1) the insurance agent agreed to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance and 3) the agent acted in such a way that the client could assume he was insured."

*Isidore Newman School v. J. Everett Eaves, Inc.*, 09-2161, p. 7 (La. 7/6/10), 42 So.3d 352, 356-57.

Specifically, Southern Marble's claims involve Defendants' alleged negligence in procuring deficient BI/EE coverage in connection with the 2019-2020 policy that was in effect when Southern Marble made an insurance claim for damages sustained during Hurricane Laura.

In accordance with La.R.S. 9:5606, the peremptive period applicable to Southern Marble's claims begins to run "from the date of the alleged act, omission, or neglect" or "from the date that the alleged act, omission, or neglect is discovered or should have been discovered. Whether or not the 2019-2020 policy meets the statutory definition of a "renewal" under La.R.S. 22:1267, is not necessarily determinative of when the peremptive period began to run; rather, the focus should be on when the alleged negligent action occurred or when it was, or should have been, discovered.

Here, it was undisputed that Southern Marble's insurance policies did not automatically renew every year. Rather, both Southern Marble and Defendants had to take action annually to obtain a policy. Southern Marble was required to submit requested information to the Defendants and complete an application, and Defendants facilitated submission of that information to the insurer. Southern Marble's claims arise out of deficient BI/EE coverage for damages sustained during Hurricane Laura and, therefore, are based only on Defendants' alleged negligence in procuring the 2019-2020 policy. While the 2017-2018 policy provided the same insurance coverage limits as the 2019-2020 policy, Defendants' claims are not based on Defendants' actions in procuring the 2017-2018 policy.

However, it is undisputed that Southern Marble received via email a copy of the 2019-2020 policy at issue on or around December 19, 2019. An insured has an obligation to read the policy when it is received, and an insured is deemed to have

2

knowledge of any deficient coverage upon the receipt of the policy. *See McKernan v. ABC Insurance Co.*, 21-859 (La. 11/23/21), 328 So.3d 69, and *Seruntine v. State Farm Fire & Casualty Co.*, 10-1108 (La. 9/3/10), 42 So.3d 968. An insured does not need to suffer a loss before the peremptive period for actions against insurers for negligence in procuring coverage begins to run. *Theriot v. Dwight W. Andrus Ins., Inc.*, 21-431 (La.App. 3 Cir. 12/15/21), 332 So.3d 224. While the *Theriot* court ultimately concluded that the peremptive period did not begin to run on the date the insured received the policy, but rather, on the date of loss, the underlying facts are distinguishable. *Theriot* involved the agent's failure to take additional agreed-upon steps to secure additional coverage after the interim step of renewing the existing policy; however, the instant case does not involve a plan to take various steps over time to obtain additional coverage.

In my opinion, the peremptive period in this case began to run no later than December 19, 2019, as that is the date that Southern Marble should have known of any deficient coverage procured by Defendants that forms the basis of its claims. However, the action was not filed until August 18, 2021, which is more than one year from the date that Southern Marble received the policy. Therefore, Southern Marble's claims are perempted in accordance with La.R.S. 9:5606 and should be dismissed.

Despite this conclusion, however, it is also my opinion that Defendants' actions in knowingly obtaining BI/EE coverage that was significantly insufficient to meet Southern Marble's needs or expectations, without specifically informing Southern Marble or explaining to it the reduced coverage procured, are reprehensible and not excused by the result of this litigation.