# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-926


**TANYA WHITE**

**VERSUS**

**PROGRESSIVE SECURITY INS. CO., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES CITY COURT, NO. 106,651
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**SHANNON JAMES GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

**AFFIRMED.**


**Wilbert Joseph Saucier, Jr.**
**Attorney at Law**
**826 Main St.**
**Pineville, LA 71361**
**(318) 473-4146**
**Counsel for Plaintiff/Appellee:**
**Tanya White**

**Ian Alexander Macdonald**
**Longman Russo**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendants /Appellants:**
**Progressive Security Ins. Co.**
**Nicole Byrd**

**GREMILLION, Judge.**

The defendant, Progressive Security Insurance Company, appeals the judgment in favor of the plaintiff, Tanya White. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

White and Progressive's insured, Nicole Byrd, were involved in a motor vehicle accident in which Byrd rear-ended White in December 2005. Byrd's liability in this matter is not in dispute. Following a bench trial in January 2008, the trial court rendered judgment in favor of White finding that her injuries were chronic and permanent. It awarded her $60,000 in general damages, $6,950 in past medical expenses, and $840 in future medical expenses. However, the total amount was limited to $50,000, the jurisdictional limit of the court. Progressive now appeals. White answers the appeal and requests damages for frivolous appeal.

## ISSUES

Progressive assigns as error:

1. The testimony of Dr. Kelly Faircloth because she lacked the expertise to render an opinion as to the cause of the MRI findings.

2. The trial court's finding that the accident caused the degenerative changes shown on White's MRI.

3. The trial court's award of $60,000 for a soft tissue injury.

## DISCUSSION

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court,

1

but if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 844.

Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Canter v. Koehring Co.,* 283 So.2d 716 (La.1973). "The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State, through Dep't of Transp. And Dev.,* 617 So.2d 880, 882 (La.1993).

In its reasons for judgment, the trial court found:

> Ms. White was treated by Dr. Kelly Faircloth, for injuries diagnosed as cervical sprain/strain. There were objective signs of injury, including muscle spasms and loss of the normal cervical curve. In addition there was a diagnosis of thoracic and lumbar strain/sprain, which were also evidenced by objective signs of injury. Ms. White was initially treated with regular treatment for a period of six months before Dr. Faircloth attempted to release Ms. White on May 30, 2006. Ms. White attempted home therapy until her return to Dr. Faircloth on May 29, 2007. At that time she was still suffering pain in the same areas of her neck and back. She was treated for approximately two more months. After another attempted release, Ms. White returned to Dr. Faircloth's care in December of 2007. Dr. Faircloth testified that she was of the opinion that Ms. White was suffering from a bulging disc in the cervical region which correlates with the location of Ms. White's complaints. This was shown by an MRI performed on June 26, 2007. The court is of the opinion that Ms. White suffered an injury which is chronic and permanent. There is nothing to suggest she will obtain any relief in the near future. At the time of the trial Ms. White was 25 months post accident with the evidence indicating her injury is permanent.

2

**EXPERT TESTIMONY**

Progressive argues that Dr. Faircloth, a chiropractor, was not qualified to read or interpret an MRI film or to make conclusions regarding its relation to a particular accident. We disagree.

In *Rowe v. State Farm Mutual Automotive Insurance. Co.,* 95-669, p. 17 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 728, *writ denied*, 96-0824 (La. 5/17/96), 673 So.2d 611, we stated: "As a general rule, the factual basis of an expert's opinion goes to the credibility of the testimony, not its admissibility, and it is up to the opposing party to examine the factual basis of the opinion in cross-examination. *Loudermill v. Dow Chemical Co.*, 863 F.2d 566 (8th Cir.1988)."

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 2798 (1983), the Supreme Court stated that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Further, appellate courts in this state have held that a testifying expert need not be the one who compiled the statistics or data; she may rely on data prepared by others. *See Barre v. Bonds*, 99-1806 (La.App. 4 Cir. 5/10/00), 763 So.2d 60. Additionally, we have held that the method of testing or information collection should be considered by the factfinder in assessing what weight to give to the expert's conclusion. *See State v. Brossette*, 93-1036 (La.App. 3 Cir. 3/2/94), 634 So.2d 1309, *writ denied*, 94-0802 (La. 6/24/94), 640 So.2d 1344.

Dr. Faircloth stated that she had testified as an expert more than thirty times. She stated that she arrives at conclusions based on the history given by the patient and her examination of the patient. She stated that she often renders opinions

3

concerning the cause of injuries in automobile accidents. As to the MRI, Dr. Faircloth testified that after requesting that an MRI be performed, she made conclusions based on the results of the MRI. She never claimed to be a specialist in reading or interpreting MRIs, however, that does not disqualify her from having an opinion, based on her experience and knowledge, that takes into consideration her treatment of the patient along with the MRI report prepared by a radiologist. This assignment of error is without merit.

## CAUSATION

Progressive argues that Dr. Faircloth's opinion regarding the cause of White's MRI findings is not supported by the record. It is elemental that a plaintiff must show a causal connection between the accident and the resulting injury. Progressive states that Dr. Faircloth even acknowledged that she could not tell from looking at the MRI report whether the findings were caused by the motor vehicle accident or the aging process.

Dr. Faircloth stated that she first examined White, regarding the subject accident, on December 9, 2005, five days after its occurrence. She said that White reported immediate head and neck pain, with lower back pain following two days later. Dr. Faircloth indicated that a physical exam revealed muscle spasms in various parts of White's neck and back. She further testified that an x-ray revealed that White had cervical hypolordosis, or a decrease in her cervical curve. Dr. Faircloth stated that this condition could be congenital or due to muscle spasm or splinting.

Dr. Faircloth diagnosed White with acute traumatic cervicothoracic sprain with muscle spasms complicated by the hypolordosis and an acute traumatic lumbar sacral sprain with associated muscle spasm based on the history White gave

4

her and the examination she performed. She opined that the December 5, 2005 accident was the cause of the injury.

White's treatment included intersegmental traction, diathermy (heat), and spinal manipulation, and she was also given a topical analgesic gel to use at home. She was actively treated for a period of six months beginning December 2005, and ending in May 2006. She was released from treatment May 30, 2006, but Dr. Faircloth testified that White continued to have neck and back pain along with decreased range of motion. She said it was not uncommon to release patients who are still symptomatic in the hopes that they will improve as they return to normal activities.

Dr. Faircloth stated that White returned to her office on May 29, 2007, with complaints of neck pain, headaches, and upper to mid back pain. She said these complaints were the same as they were the year prior. Dr. Faircloth indicated that an exam showed muscle spasms. She implemented a similar course of treatment as she had the year before. Dr. Faircloth testified that White reported no intervening trauma since her visit the year before. Dr. Faircloth continued treating White through July 30, 2007, when she was released again, although still experiencing some occasional pain. Dr. Faircloth was of the opinion that White suffered from a chronic sprain/strain injury.

White again returned for treatment on December 12 and 19, 2007, complaining of similar symptoms as before. She again reported no intervening trauma, and Dr. Faircloth again believed that White's symptoms originated from the December 2005 accident.

Dr. Faircloth testified that she requested that an MRI be performed,

which was completed on June 26, 2007. The reporting radiologist indicated disc protrusions at C3-4, C4-5, C5-6, and C6-C7. Dr. Faircloth stated that it is customary to request an MRI when a patient shows little improvement over time and that it is a helpful tool in diagnosing the patient and in prescribing the appropriate treatment. However, she admitted that she did not review the film, only the report, and that an MRI merely takes a picture of the condition that exists at that point in time.

Dr. Faircloth was of the opinion that the protruding disc, more likely than not, resulted from this accident, but that it was difficult to say for certain since no prior testing had been done. Nevertheless, she testified that it was her opinion that the injuries from the December 2005 accident caused the protruding disc. Dr. Faircloth went on to indicate that White would need periodic care depending on her activity level.

Progressive introduced several photographs of the rear of White's car following the accident, which showed little or no visible damage. White further testified that she drove away from the accident, went to lunch, and then returned to work.

Having reviewed the entire record, we cannot say that the trial court erred in finding that the December 2005 accident was the cause of White's injuries, including the protruding disc that revealed itself on the MRI. Although we may have found differently had we been the trier of fact, based on the record before us, the trial court's findings were reasonable and, therefore, cannot be disturbed on appeal. Accordingly, this assignment of error is without merit.

## DAMAGES

The trial court awarded White $60,000 in general damages. The trial

court's findings are accorded great weight when reviewing a general damage award and should rarely be disturbed absent a showing of clear abuse of discretion. *Andrus v. State Farm Mut. Auto. Ins. Co.,* 95-0801 (La. 3/22/96), 670 So.2d 1206. Thus, we must determine whether the trial court's award "is, *in either direction,* beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances" before we may adjust the award. *Id.* at 1210.

Progressive argues that the evidence established that White sustained a six month injury as opposed to an injury lasting more than two years. Had the trial court concluded that this was a six month injury (or even a six month injury with only minor residual problems), the award would have clearly been abusive. That was, however, not the case. Rather, the trial court found that White was "still suffering" "from chronic and permanent" problems two years after the accident. As stated above, there was a reasonable basis for these findings.

In addition to the medical evidence, we have White's testimony. White testified to her ongoing neck and back pain along with continuing periodic headaches. She testified that she liked to work out at the gym, but had to limit herself in order to prevent injury. She further stated that she could no longer go snow-skiing and that a boat ride following the accident caused severe back pain. She stated she regularly boated prior to the accident but no longer does after the one attempt. She also stated that the accident has limited her gardening activities. White further testified that she cannot lift heavier things.

Additionally, Shirley Nunnelly, White's mother and the owner of the family restaurant where White works, testified that prior to the accident, White had

no limitations at work, but that since the accident she is no longer able to lift items such as sacks of onions, canned goods, big cans, and cases of canned goods. She further testified that since the accident, White has been unable to maintain her garden or go to the gym like she used to. Nunnelly also said that White cannot wash her car. She further stated that White often complains of headaches. Nunnelly testified that these problems continued through the time of trial.

It was not unreasonable for the trial court to find that White suffered from a chronic injury lasting more than two years. Although we find this award is on the high side, we cannot say that the trial court abused its vast discretion in its general damage award. Accordingly, this assignment of error is without merit.

## FRIVOLOUS APPEAL

White argues that she should be awarded damages for frivolous appeal.

> La.Code Civ.P. art. 2164 provides that an appellate court may award damages for frivolous appeal. However, damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, that serious legal questions are not raised, or that the attorney does not seriously believe in the position he advocates. *Robinson v. Thornton,* 96-1329 (La.App. 3 Cir. 10/29/97); 705 So.2d 745, *writ denied*, 97-2963 (La.2/6/98); 709 So.2d 739.

*Cooks v. Rodenback*, 97-1389, p. 9 (La.App. 3 Cir. 4/29/98), 711 So.2d 444, 449. Considering the facts before us, particularly the minor nature of the accident and the gaps in treatment, we find no basis for awarding damages for frivolous appeal.

## CONCLUSION

The judgment of the trial court in favor of the plaintiff-appellee, Tanya White, is affirmed. All costs of this appeal are assessed against the defendant-appellant, Progressive Security Insurance Company.

**AFFIRMED**.