BRIAN D. GIGLIO

VERSUS

ANPAC LOUISIANA INSURANCE COMPANY
AS THE UNINSURED/UNDERINSURED
CARRIER OF BRIAN D. GIGLIO

NO. 20-CA-209

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 772-929, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING


December 23, 2020


**MARC E. JOHNSON**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson


**REVERSED, IN PART;**
**AFFIRMED AS AMENDED**
    **MEJ**
    **SMC**
    **FHW**

COUNSEL FOR PLAINTIFF/APPELLANT,
BRIAN D. GIGLIO
     Michael C. Ginart, Jr.
     Joyce D. Young
     Nicholas Cusimano
     John C. Ginart

COUNSEL FOR DEFENDANT/APPELLEE,
ANPAC LOUISIANA INSURANCE COMPANY AS THE
UNINSURED/UNDERINSURED CARRIER OF BRIAN D. GIGLIO
     James R. Nieset, Jr.
     Sara A. LaRosa
     Devin J. Barnett
     Jessica V. Hidalgo

**JOHNSON, J.**

Plaintiff/Appellant, Brian D. Giglio, appeals a jury verdict from the 24th Judicial District Court, Division "H," that awarded him no damages for future pain, suffering, mental anguish, aggravation or inconvenience and a total of $44,024 in special and general damages against Defendant/Appellee, ANPAC Louisiana Insurance Company (hereinafter referred to as "ANPAC"), for an automobile accident. For the following reasons, we affirm the judgment, in part, reverse, in part, and affirm as amended.

### FACTS AND PROCEDURAL HISTORY

On June 17, 2015, Mr. Giglio was involved in an automobile accident. While traveling north on the Causeway Bridge in his 2013 Dodge Charger, Mr. Giglio was struck from behind by Brandon May, the driver of a 2005 Honda Accord, as traffic was slowing on the bridge. Mr. Giglio settled with Mr. May and his insurance carrier, State Farm Mutual Insurance Company, for the minimum policy limits.

On June 7, 2017, Mr. Giglio filed a Petition for Damages against ANPAC, his uninsured/underinsured motorist insurance carrier. He alleged that he suffered past, present, and future pain—which included but was not limited to injuries to his cervical spine and lumbar spine and numerous contusions and bruising—mental anguish, inconvenience, and aggravation as a result of the June 17, 2015 collision. He further alleged that he suffered loss of income and wages, property damage, and other out-of-pocket expenses, all of which exceeded the primary insurance limits. ANPAC denied any liability to Mr. Giglio in its Answer and averred that the vehicle driven by Mr. May carried sufficient limits of liability insurance to fully compensate Mr. Giglio for any damages he may have sustained.

The matter proceeded to trial on December 9 and 10, 2019 before a jury. The jury returned a verdict in favor of Mr. Giglio and against ANPAC,

determining that he suffered injuries as a result of the automobile accident on June 17, 2015. The jury awarded Mr. Giglio the following damages:

| | |
|---|---|
| Past medical expenses | $11,024 |
| Future medical expenses | $5,000 |
| Past, pain suffering, mental anguish, aggravation and inconvenience | $20,000 |
| Future pain and suffering, mental anguish, aggravation, and inconvenience | $0 |
| Loss of enjoyment of life | $5,000 |
| Past loss wages | $3,000 |
| Total | $44,024 |

By stipulation of the parties, it was established that Mr. Giglio previously received funds from Mr. May and his insurer for his damages. ANPAC was tendered a $9,195 credit against the judgment that was due. On January 3, 2020, the trial court rendered a written judgment in favor of Mr. Giglio and against ANPAC in the amount of $19,829, plus legal interest and costs.

Mr. Giglio filed a Motion for New Trial, or in the alternative, Motion for Judgment notwithstanding the Verdict on January 10, 2020, alleging the award of general damages was woefully inadequate. He further argued that the jury's failure to award future pain, suffering, mental anguish, aggravation, and inconvenience constituted an abuse of discretion. The trial court denied Mr. Giglio's motions on April 14, 2020. The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Giglio alleges: 1) the trial court erred in failing to grant a mistrial and/or new trial for ANPAC's failure to provide records; 2) the jury abused its discretion in failing to fully compensate him for his injuries; and 3) the jury erred in failing to award him damages for future pain and suffering, mental

anguish, aggravation and inconvenience.

## LAW AND ANALYSIS

Motion for Mistrial and/or New Trial

Mr. Giglio alleges the trial court abused its discretion in failing to grant a mistrial, and later a new trial, for ANPAC's intentional failure to provide medical records specifically requested by him on more than one occasion, which ultimately tainted the jury and its decision. He argues that the trial court did not even admonish the jury regarding the questions asked by ANPAC in reference to the inadmissible records—namely, records regarding injuries sustained in an unrelated incident that occurred while Mr. Giglio was at work—that were used by the defense to taint the jury's opinion of him. As a result, Mr. Giglio contends that ANPAC's prejudicial misconduct made it impossible for a jury to reach a proper verdict because the allowance of the questions regarding the inadmissible records greatly prejudiced him and had a substantial effect on the outcome of the case.

ANPAC maintains that neither a mistrial nor a new trial was warranted in this case, as the jury's verdict was reasonably based upon the facts and evidence, and no prejudicial misconduct to Mr. Giglio occurred. It avers that the brief discussion of the workplace accident was inconsequential compared to the significant testimony and evidence regarding Mr. Giglio's subsequent motor vehicle accident in July 2016. ANPAC asserts that it is likely that the jury limited the award for past medical expenses to the exact amount incurred by Mr. Giglio as of his last date of treatment—April 29, 2016—which was before his subsequent July 2016 accident. It further asserts that Mr. Giglio was impeached by his discovery responses and testimony under cross-examination, not by the properly excluded records, and the trial court properly allowed it to impeach Mr. Giglio using the workplace accident because impeachment evidence does not need to be produced in discovery.

*Motion for Mistrial*

During the cross-examination of Mr. Giglio, trial counsel for ANPAC presented medical records to Mr. Giglio. The medical records were obtained pursuant to a subpoena from Mr. Giglio's employment file. Mr. Giglio's attorney objected to the documents, arguing that those records should have been excluded because they were requested from ANPAC but were not provided to him prior to trial. The trial judge agreed with Mr. Giglio's attorney and prohibited the use of the physical documents for impeachment purposes. However, the trial judge found that the prohibition of the records did not prevent ANPAC's counsel from questioning Mr. Giglio about a specific incident. No reference of what the excluded medical records pertained to was disclosed to the jury. ANPAC's counsel then proceeded to question Mr. Giglio about a workplace incident that occurred on April 29, 2016.

After the conclusion of the presentation of the evidence, Mr. Giglio's attorney orally moved for a mistrial. He argued that the line of questioning by ANPAC's attorney unfairly prejudiced Mr. Giglio. In denying the motion for mistrial, the trial judge reasoned,

> So the concern was initially with regard to the objection, was that Mr. Nieset [ANPAC's attorney] was trying to use documents which he obtained in a subpoena which may or may not have been turned over to counsel in a timely fashion, or turned over to Plaintiff's counsel at all. What ultimately ended up happening was Mr. Nieset asked questions regarding a prior accident. And then to the extent that Mr. Giglio was impeached, he was impeached with answers to discovery which the Court would have allowed in and was not – and certainly was turned over to Plaintiff's counsel as Plaintiff's counsel produced those answers. So, I don't think there was any harm in allowing the proceedings to proceed in the way they proceeded. There was no impeachment evidence that was not turned over to Plaintiff's counsel, used in any fashion. The only evidence that ultimately ended up being used with regard to the impeachment was the answers to interrogatory – were the answers to the interrogatories which were certainly available to and provided to the Plaintiff as they actually produced the answers and those questions.

According to La. C.C.P. art. 1631, the trial court has the power to require

that the proceedings be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done. The trial court, on its own motion, or on the motion of any party, after A hearing, may grant a mistrial. *Id*. A motion for mistrial in a civil case should be granted under the following circumstances: 1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity, and 2) where no other remedy would provide relief to the moving party. *Brockmeier v. Georgia-Pac., LLC*, 17-615, p. 2 (La. App. 4 Cir. 7/1/17); --- So.3d ----, 2017WL11455793, citing *Searle v. Travelers Insurance Co.*, 557 So.2d 321 (La. App. 4th Cir. 1990); *See also*, *Alfonso v. Piccadilly Cafeteria, Inc.*, 95-279 (La. App. 5 Cir. 11/28/96); 665 So.2d 589, 593, *writ denied*, 95-3119 (La. 2/16/96); 667 So.2d 1060. While the trial court is granted great discretion in determining whether to grant a mistrial, the trial court's judgment denying a motion for mistrial may be reversed if: 1) the conduct complained of makes it impossible for the jury to reach a proper verdict; 2) no other remedy would provide relief to the complaining party; or, 3) the admission of the question resulted in "prejudicial misconduct" to the complaining party. *Id*.

Here, ANPAC's counsel was not allowed to question Mr. Giglio in reference to the medical records that were excluded by the trial court. Instead, Mr. Giglio was questioned about a workplace accident that occurred on April 29, 2016, his discovery response, and testimony pertaining to other accidents. Specifically, Mr. Giglio was questioned about his response to the interrogatory concerning any prior involvement in any accident of any type or nature before or after the June 2015 collision. The response to the interrogatory did not reference Mr. Giglio's April 2016 workplace accident. Thus, the line of questioning was used to impeach Mr. Giglio based upon his discovery response and live testimony, not the prohibited medical records.

Accordingly, we find that the conduct complained of by Mr. Giglio did not make it impossible for the jury to reach a proper verdict. The medical records were properly excluded by the trial court, and the line of questioning was properly allowed for impeachment purposes. In this instance, there was no need for the jury to be admonished. Therefore, we find that the trial court did not err in denying Mr. Giglio's motion for mistrial.

*Motion for New Trial*

In his motion for new trial, Mr. Giglio argued that a miscarriage of justice resulted from the misconduct of ANPAC in failing to provide medical records it procured pursuant to a subpoena. He contended that ANPAC's disregard of the discovery rules and the misconduct of ANPAC's counsel during the cross-examination highly prejudiced before him the jury, which was reflected in the substantially inadequate award for past pain, suffering, mental anguish, and inconvenience. As a result of those factors, Mr. Giglio argued that he was entitled to a new trial.

The appellate standard of review of the ruling on a motion for new trial is whether the trial court abused its discretion. *Collins v. Davis*, 16-410 (La. App. 5 Cir. 2/22/17); 214 So.3d 974, 978, citing *Marciante v. Marciante*, 12-569 (La. App. 5 Cir. 3/27/13); 113 So.3d 387. A new trial shall be granted, upon contradictory motion, where: 1) the verdict or judgment is contrary to the law and evidence; 2) important evidence is obtained after trial; or, 3) the jury was either bribed or behaved improperly. *Id.*, citing *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00); 772 So.2d 94. Moreover, pursuant to La. C.C.P. art. 1973, a new trial may be granted if there is good ground therefore, except as otherwise provided by law. *Id.*

As previously mentioned, the trial court properly excluded the medical records obtained by ANPAC's counsel that were not provided to Mr. Giglio prior

to trial. Mr. Giglio's main complaint is that ANPAC's counsel was allowed to question him about the April 2016 workplace accident before the jury, which may have influenced the jury's damages awards. The line of questioning was properly allowed by the trial court for impeachment purposes. Thus, there was no ground upon which Mr. Giglio's motion for new trial should have been granted. Therefore, we find that the trial court did not err in denying Mr. Giglio's motion for new trial.

Full Compensation for Injuries

Mr. Giglio alleges the jury's award for past pain and suffering, mental anguish, aggravation, inconvenience, and future medical expenses are woefully low for the injuries he sustained. He argues that the uncontroverted medical testimony confirmed that he suffered herniated discs at C5-C6, C6-C7, L4-L5, and L5-S1, which he sought treatment for and is still experiencing pain that will require future treatment. He contends that the jury only awarded $20,000 for the herniated discs, which is $30,000 less than the lowest general damages award within the jury's discretion for just one non-surgical herniated disc. Mr. Giglio avers that the jury in this matter abused its discretion with the abusively low award of damages to him.

ANPAC maintains that the jury did not abuse its discretion, and it fully compensated Mr. Giglio for his injuries solely resulting from the accident-at-issue. It avers that the jury's awards of $20,000 for past pain and suffering and $5,000 for loss of enjoyment of life are reasonable when considered in light of the facts and evidence. ANPAC asserts that Mr. Giglio had a history of complaints of pain in his right shoulder, upper back, and lower back from 2011 through 2014, all of which were areas Mr. Giglio claimed injury to as a result of the accident-at-issue; and, all of this evidence could have reasonably led the jury to question whether Mr. Giglio's herniated discs were the result of the accident-at-issue.

The jury in this matter awarded Mr. Giglio $11,024 for past medical expenses; $5,000 for future medical expenses; $20,000 for past pain, suffering, mental anguish, aggravation, and inconvenience; $5,000 for loss of enjoyment of life; and, $3,000 for past lost wages.

In *Woods v. Winn-Dixie Montgomery, L.L.C.*, 17-707 (La. App. 5 Cir. 6/27/18); 251 So.3d 675, 684, *writ denied*, 18-1263 (La. 10/29/18); 255 So.3d 567, this Court explained an appellate general damages review by stating:

> "General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle, which cannot be definitely measured in monetary terms.'" The assessment of the appropriate amount of damages, by a trial judge or jury, is a determination of fact, one entitled to great deference on review. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.
> Before a court of appeal can disturb an award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports the notion that the lower court abused its great discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point reasonably within the discretion afforded that court. (*See also*, *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993), where the Louisiana Supreme Court found, "Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion."). It is never appropriate for a court of appeal, having found that the trial court has abused its discretion, to simply decide what it considers an appropriate award on the basis of the evidence.

(Internal citations omitted).

At trial, Mr. Giglio presented the live testimony of two of his treating physicians, Dr. Harvey Nicaud, Jr. and Dr. Chad Domangue. Dr. Nicaud was accepted as an expert in chiropractic medicine. Mr. Giglio had been a long-time patient of Dr. Nicaud and had been treating with Dr. Nicaud as far back as 2011. Although he had seen Dr. Nicaud since 2011, Mr. Giglio complained of tightness and throbbing in the low back and left hamstring pain. There were no reports of

neck, arm, mid-back, or lower leg pain at that time. Over the next few years, Mr. Giglio complained of upper back, right shoulder pain, and low back pain, with pain ranging from two out of 10 intensity to five out of 10 intensity.

On the day of the accident, June 17, 2015, Mr. Giglio visited Dr. Nicaud after the accident. Mr. Giglio reported to Dr. Nicaud that he was rear-ended and felt a hard jolt to his upper body. Dr. Nicaud noted a neurological deficit relating to Mr. Giglio's cervical spine that had not been noticed in the previous years of treatment. After the accident, on July 17, 2015, Mr. Giglio complained of five out 10 upper back pain; five out of 10 low back pain; five out of 10 neck pain; three out of 10 right trapezius pain; and three out of 10 left wrist pain. He was also starting to experience some radicular pain down the left arm.

By August 2015, Mr. Giglio was reporting pain along his whole spine and down his arm and legs, and his pain was not improving with treatment. Dr. Nicaud testified that it was not unusual to see progression of pain from either the neck or back down to a leg or arm. Because of the persistent pain levels, Dr. Nicaud sent Mr. Giglio for a cervical MRI, which was performed on December 30, 2015. The December 2015 MRI showed a broad based posterior and right paracentral herniation of C4-5 and C5-6 and the bone shifting backwards on top of C-5. The MRI also showed herniations at L2 and L3. However, Dr. Nicaud testified that those herniations existed prior to the June 2015 accident.

At a visit on July 29, 2016, Mr. Giglio reported to Dr. Nicaud that he had been involved in another accident. Although Mr. Giglio had a subsequent accident, Dr. Nicaud agreed that Mr. Giglio's symptoms at the time of trial were directly related to the July 2016 accident, due to the fact that Mr. Giglio's syptoms had worsened. Dr. Nicaud sent Mr. Giglio for a second MRI, which was performed on October 13, 2017. That MRI showed no significant changes in the L4-5 and L5-S1 levels since the 2015 MRI. The December 2017 MRI reported

that the C2, C3, C4, C5-6, C6-7, and C7-T1 levels were also unremarkable or unchanged since the 2015 MRI was performed.

Dr. Nicaud testified that it was more probable than not that the neck pain Mr. Giglio was experiencing at the lower cervical levels was caused by the June 2015 accident, and the aggravations were caused by the July 2016 accident. He affirmed that the July 2016 accident did not cause Mr. Giglio's problems; rather, the July 2016 accident made the existing problems worse for a period of time. Dr. Nicaud testified that Mr. Giglio's disc would continue to degenerate, and Mr. Giglio's symptoms will gradually worsen until they probably become unbearable.

Dr. Domangue was accepted as an expert in neurology and pain management. On April 26, 2016, Mr. Giglio visited Dr. Domangue with complaints from the June 15, 2015 accident. Mr. Giglio was experiencing numbness and pain from his back down to his foot and from his neck down to his left arm. Dr. Domangue opined in his notes that the neurological deficits Mr. Giglio was experiencing were more probable than not related to the June 2015 accident, along with the other herniations. Mr. Giglio was diagnosed by Dr. Domangue with cervical disc disorder with radiculopathy.

Dr. Domangue recommended an epidural steroid injection ("ESI") for both the cervical and lumbar areas. Dr. Domangue testified that he would only be willing to give a patient up to four injections a year. The costs for each injection range from $5,000-$10,000. Dr. Domangue further recommended a referral to a surgeon, if Mr. Giglio's pain did not improve.

Mr. Giglio and his wife, Heather Giglio, also testified at trial. Both of them attested that Mr. Giglio experienced pain after the June 2015 accident that affected his way of life. Prior to the accident, Mrs. Giglio stated that Mr. Giglio was more active and happier. She testified that Mr. Giglio's pain changed his personality, he had become a little short-tempered, and his problems were getting worse.

Mr. Giglio testified that he received treatment from Dr. Nicaud as far back at 2011. He admitted that he experienced minimal low back pain in 2011 and 2012, but that pain had resolved. He testified that he did not have pain in his neck, right shoulder and elbow, left arm and fingers, or down to his foot during that time. After the June 2015 accident, Mr. Giglio testified that the pain he experienced did not subside. He attested that the July 2016 accident increased his then-existing pain levels to a greater degree.

Considering the significant consequences of the injuries Mr. Giglio has incurred and the total damages awarded, we conclude that the award for past pain and suffering, mental anguish, aggravation and inconvenience, totaling $20,000, is abusively low. We find that no rational trier of fact could assess the effects of Mr. Giglio's damages at $20,000, especially when considering his injuries. Accordingly, we turn to similar cases to determine an appropriate award.

In *Souhlas v. Le Tam*, 04-1029 (La. App. 5 Cir. 2/15/05); 897 So.2d 762, this Court affirmed a general damages award of $25,000, where the plaintiff suffered disc herniations at the C5-6 and C6-7 levels from an automobile accident. The plaintiff experienced residual pain and was ordered to continue with conservative treatment.

In *Clement v. Carbon*, 13-827 (La. App. 5 Cir. 4/9/14); 153 So.3d 460, this Court awarded $30,000 in general damages, where the plaintiff suffered a bulging disc at C5-6 and some ligamentous thickening at the C6-7 vertebrae from an automobile accident, and treated conservatively with a chiropractor. The plaintiff was involved in a second accident; however, she still suffered from pain related to the bulging disc.

In *Williams v. Mathieu*, 13-1373 (La. App. 5 Cir. 10/29/14); 155 So.3d 54, the appellate court affirmed a general damages award of $65,000 for the plaintiff's herniated discs at C3-4 and C5-6, a bulge at C6-7, and L5-S1 bulging disc suffered

in an automobile accident. The plaintiff treated with a chiropractor for years and experienced residual pain at the time of trial.

Lastly, in *White v. Progressive Security Ins. Co.*, 08-926 (La. App. 3 Cir. 2/4/09); 6 So.3d 860, the appellate court affirmed a general damages award of $60,000 for a plaintiff who suffered multiple cervical disc protrusions from an automobile accident. She treated with a chiropractor and still suffered pain two years after the accident.

After review, we find that an award of $50,000 is a reasonable award for Mr. Giglio's past pain and suffering, mental anguish, aggravation and inconvenience. The medical experts testified that his injuries to multiple discs were more probable than not related to the June 2015 accident, not the July 2016 accident. Additionally, Mr. Giglio had treated conservatively with a chiropractor and was still experiencing residual pain at the time of the trial.

Furthermore, we conclude that the jury erred in its award of $5,000 for future medical expenses. Special damages, such as medical expenses can be determined with relative certainty. *Mosbey v. Jefferson Par. Sheriff's Office*, 18-69 (La. App. 5 Cir. 6/27/18); 250 So.3d 1110, 1118. However, we only increase the future medical expenses award for one injection per each of his cervical and lumbar areas. Dr. Domangue testified that each ESI ranges from $5,000 to $10,000 in costs. There was no evidence presented to contradict the estimated costs of the ESIs or Mr. Giglio's need for an ESI. While Dr. Domangue testified that, generally, he would not give a patient more than four ESIs in any given year, there was no testimony as to how many total injections Mr. Giglio may require or how many years he would require those injections. Furthermore, Mr. Giglio testified that he was hesitant about receiving the ESI in the future due to the possible complications from the injections. Therefore, we amend the future medical expenses award to $20,000.

<u>Failure to Award Future General Damages</u>

Mr. Giglio alleges the jury erred in failing to award him future pain and suffering, mental anguish, aggravation and inconvenience, even though he was awarded future medical expenses. He argues that it is a legal error for a jury to award special damages for medical expenses, while simultaneously denying general damages. Mr. Giglio contends the jury clearly found that he endured compensable pain and suffering, and he needs to continue treatment for his injuries, as evidenced by the award for future medical expenses. Consequently, he avers that the failure of the jury to award future pain and suffering, while awarding future medical expenses, is inconsistent and amounts to an abuse of discretion.

Conversely, ANPAC maintains that the jury's award for future special damages without future general damages was reasonable, given Mr. Giglio's subsequent motor vehicle accident. It avers that, although Mr. Giglio argues the jury *should* not have reasonably reached such a conclusion, the proper standard for the trial court was an unbiased consideration of whether the jury *could* have decided such a conclusion based on the facts and evidence presented to it in this case. ANPAC asserts that the jury heard substantial evidence about Mr. Giglio's subsequent July 2016 accident, including the ongoing lawsuit for damages from it, and the increase in Mr. Giglio's pain after the July 2016 accident. It also asserts the jury heard that Mr. Giglio had pre-existing pain as early as 2011 with projected future complaints and treatment. Thus, ANPAC concludes that the facts and evidence objectively support denying an award for any other future medical expenses or future general damages because the injuries complained of after July 25, 2016 may have been caused by the subsequent accident.

The jury in this matter awarded Mr. Giglio $5,000 for future medical expenses. However, the jury did not award Mr. Giglio any amount of damages for future pain, suffering, mental anguish, aggravation, or inconvenience.

Compensatory damages are divided into special damages and general damages. *Mosbey*, *supra*. General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty. *Id*. The trier of fact is given great and vast discretion in setting general damage awards, and an appellate court should rarely disturb an award of general damages. *Id.*, citing *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed. 2d 379 (1994).

When the jury has awarded special damages but has declined to award general damages, the reviewing court must determine whether the jury's finding "is so inconsistent as to constitute an abuse of discretion." *Archangel v. Mayeux*, 12-696 (La. App. 5 Cir. 5/30/13); 119 So.3d 786, 792, citing *Willis v. Noble Drilling (US), Inc.*, 11-598 (La. App. 5 Cir. 11/13/12); 105 So.3d 828, 840. A jury can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs yet failed to prove that he endured compensable pain and suffering as the result of the defendant's fault. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00); 774 So.2d 70, 76. However, while there is no bright line rule to define when a trier of fact's damages award is an abuse of discretion, where a jury has awarded special damages but declined to award general damages, "as a general proposition," the verdict may "often" be so inconsistent as to constitute an abuse of discretion. *Thibodeaux v. Donnell*, 16-570 (La. 1/20/17); 219 So.3d 274, 280, citing *Wainwright*, *supra*.

Considering the evidence presented, we find that the jury abused its discretion in failing to award Mr. Giglio future pain and suffering, mental anguish, aggravation and inconvenience, yet awarding him future medical expenses. Dr. Nicaud testified that Mr. Giglio's symptoms will gradually worsen until they probably become unbearable. No evidence was presented to contradict Dr. Nicaud's medical opinion. Thus, we find that the record does not justify an award

of $0 for future general damages, and the award is abusively low.  Therefore, we render an award of $10,000 for future pain and suffering, mental anguish, aggravation and inconvenience.

**DECREE**

For the foregoing reasons, we affirm the portion of the trial court's judgment that denied Mr. Giglio's motions for mistrial and new trial.  We amend the trial court's award of $20,000 for past pain and suffering, mental anguish, aggravation and inconvenience, finding it to be abusively low, and award Mr. Giglio $50,000.  Further, we amend the amount of the trial court's award for future medical expenses to $20,000 to conform with the evidence presented during trial.  Finally, we reverse the trial court's denial of future pain and suffering, mental anguish, aggravation, and inconvenience and render an award of $10,000.  Due to the stipulation of the parties at the trial court level, we affirm the $9,195 credit to ANPAC against the judgment.

**REVERSED, IN PART;
AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 23, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-209

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
JOYCE D. YOUNG (APPELLANT)          MICHAEL C. GINART, JR. (APPELLANT)          JAMES R. NIESET, JR. (APPELLEE)
JESSICA V. HIDALGO (APPELLEE)          SARA A. LAROSA (APPELLEE)

### MAILED

JOHN C. GINART (APPELLANT)          DEVIN J. BARNETT (APPELLEE)
NICHOLAS CUSIMANO (APPELLANT)          ATTORNEY AT LAW
ATTORNEYS AT LAW          3501 NORTH CAUSEWAY BOULEVARD
2114 PARIS ROAD          SUITE 400
CHALMETTE, LA 70043          METAIRIE, LA 70002